NOTICE

Decision filed 10/14/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200042-U

NO. 5-20-0042

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 16-CF-466 |
| | ) | |
| JUWAN K. JACKSON, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held:* Remand for compliance with Illinois Supreme Court Rule 604(d) is not required where the defendant presented evidence and argument in support of his postplea claims at a hearing on the defendant's amended motion to withdraw guilty plea, and counsel was not ineffective in presenting such claims.

¶ 2    The defendant, Juwan K. Jackson, and codefendant, Cortez Turner, were charged with multiple offenses in connection with the shooting and death of Detrick Rogers on October 24, 2016. The defendant and Turner were charged with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (2), (3) (West 2016)) (counts I through III), one count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2016)) (count IV), and one count of conspiracy to commit aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2016)) (count V). Turner's case was subsequently severed from the defendant's case. At a bench trial in December 2018, Turner

1

was found guilty of two counts of first degree murder, aggravated discharge of a firearm, and conspiracy to commit aggravated discharge of a firearm. The third count of first degree murder was dismissed at trial.

¶ 3    On May 23, 2019, the defendant pled guilty to one count of first degree murder and was sentenced to 20 years in the Illinois Department of Corrections (IDOC) pursuant to a plea agreement with the State. The defendant subsequently filed a *pro se* motion to withdraw guilty plea and vacate sentence. Postplea counsel was appointed to represent the defendant, and counsel filed an amended motion to withdraw guilty plea. Following a hearing, the circuit court denied the defendant's motion. The defendant appeals, arguing that postplea counsel failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), or, in the alternative, that postplea counsel was ineffective in presenting the defendant's claim that he had a defense worthy of consideration. For the following reasons, we affirm.

¶ 4                                                 I. BACKGROUND

¶ 5    On October 24, 2016, at approximately 1:32 a.m., law enforcement responded to a call of "shots fired" at the intersection of South 20th Street and Shomaker Drive in Murphysboro, Illinois. Officers responded and found Detrick Rogers, who had been shot. Detrick was lying in the yard of 1936 Shomaker Drive. Witnesses initially reported hearing 30-40 gunshots and several shell casings were located at the intersection. Officers were told that the suspects were in a black Lincoln passenger car that drove behind a house located at 620 S. 20th Street. Responding officers located the Lincoln, which was "warm to the touch." An assault rifle was also found in a brush pile a few yards away from the Lincoln. Several items, including a black pistol case, were recovered from the Lincoln. The Lincoln was owned by an individual named Darrion Jarrett, who indicated the defendant was in control of the car at the time of the shooting.

2

¶ 6    The officers' investigation revealed the following additional facts. A short time after hearing the gunshots, Patyce Houston, who lived at 620 S. 20th Street, stated that the defendant "banged on her door" and demanded entry to the residence. The defendant told Houston that something bad had happened and demanded a ride away from the area. Houston obliged and, after she dropped the defendant off, the defendant grabbed Houston's wrist and told her, "you *** did not see me." The defendant stated that he "f*** up," and that "they shot at [the defendant] first." The defendant indicated that he thought he killed someone but "did not mean to."

¶ 7    During the investigation, the officers also learned that the defendant, Turner, and two other individuals were in a white Kia during the shooting and that the defendant was in the front passenger seat of the car. Potential gunshot residue, three .223-caliber shell casings, and one .357-caliber shell casing were recovered from the Kia. Officers also learned that Turner was injured during the shooting and suffered a gunshot wound to his left thigh.

¶ 8    As a result of the investigation, the defendant, and later Turner, were indicted with the aforementioned offenses in connection with the shooting of Detrick. During the pendency of his case, the defendant retained plea counsel to represent him. Prior to the defendant's plea in this case, plea counsel filed two notices of affirmative defenses which indicated that the defendant intended to assert the following defenses: self-defense, the defense of others, and prevention of a forcible felony. Plea counsel also filed multiple answers to discovery that disclosed potential defense witnesses. Two of the disclosed witnesses were Linda Castillo and Latoya Rogers. An investigator working for plea counsel obtained a written statement from Castillo and drafted a memorandum of the investigator's interview with Latoya, who was uncomfortable with reducing her statement to writing. These documents were attached to the answers to discovery filed by plea counsel.

3

¶ 9     Castillo's written statement provided as follows. Castillo stated that an individual named Cleophus Gaines told Castillo that Gaines was at an IHOP in Marion, Illinois, with Emmanuel Shanklin and Terry Rogers. The defendant and some of his friends were also at the IHOP. Gaines stated that Terry and the defendant exchanged words, and Terry slapped the defendant in the face. Gaines, Terry, and Shanklin left the IHOP and went to Shanklin's house. According to Gaines, he, Terry, and Detrick were standing outside of Shanklin's house when Gaines saw the defendant's car "creeping" down the road. Gaines stated that when the defendant's car was in front of Shanklin's house, Terry began shooting at the defendant, and the defendant returned fire. Gaines saw Detrick fall, and the defendant sped off. Gaines indicated that Terry gave his firearm to Shanklin and instructed him to get rid of it. Shanklin drove away on his motorcycle with the gun. Terry then ran to Lakeisha Rogers' home and demanded a new pair of clothing. Terry instructed Lakeisha to get rid of his clothing, which had blood on them. Gaines told Castillo that Gaines believed Terry got rid of his clothes and the gun because he accidentally shot Detrick. Gaines indicated that he and his friends had consumed "lean"[1] at the time of the shooting.

¶ 10    The investigator's memorandum of Latoya's interview provided as follows. The defendant was the father of one of Latoya's sons, and Detrick was her uncle. Latoya reported that she was at the home of Quantella Priget when Quantella's sister, Devanna Priget, arrived at the house. Devanna was upset and told Latoya and Quantella that after Detrick was shot, Terry came to her house with blood on his clothing. Devanna stated that Terry cleaned himself up, threw "some stuff" in the trash, and then returned to where Detrick was shot. Latoya also reported that prior to the shooting, she had overheard a conversation between Shanklin and Terry about robbing the defendant. Latoya indicated that "word on the street" was that Terry accidentally shot Detrick.

[1]Lean is a mixture of cough syrup containing codeine and promethazine mixed with a soft drink.

According to Latoya, Terry had tried talking with her about the night of the shooting, but Latoya always "shut him off" because she did not want to know about the shooting.

¶ 11    In addition to the affirmative defenses, plea counsel also filed a motion to disqualify Gaines as a witness, challenging his competency to testify. Plea counsel attached an excerpt of Gaines's testimony from Turner's trial and a psychological evaluation performed on Gaines in an unrelated case. The excerpt from Turner's trial provided that Gaines admitted to consuming "lean" and cocaine prior to the shooting, but testified that he could see the defendant "clear as day" in the front seat of the car, hanging out the window with two pistols. The circuit court denied the defendant's motion, noting that it was present for Gaines's testimony at Turner's trial.

¶ 12    During a pretrial hearing on "all pending matters" the parties informed the circuit court that they had reached a fully negotiated plea agreement. In exchange for the defendant's plea of guilty to first degree murder, the State recommended the defendant be sentenced to 20 years' imprisonment. The State agreed to dismiss the remaining charges as well as other unrelated charges pending against the defendant for two aggravated battery offenses and filing a false report.

¶ 13    The circuit court advised the defendant as to the charge he was pleading guilty to and the applicable range of punishment. The trial court also reviewed the terms of the plea agreement and confirmed the defendant did not have any questions. The defendant indicated that he did not need any additional time to talk with his attorney. The circuit court admonished the defendant of his right to a trial by judge or jury and that the State would be required to prove the defendant guilty beyond a reasonable doubt. The circuit court advised the defendant that he had the right to cross-examine, challenge, and confront the State's witnesses at trial and that the defendant had the right to present evidence on his own behalf. The circuit court further advised the defendant that he had the right to remain silent. The defendant indicated that he understood his rights and that by pleading

5

guilty, he was giving up those rights. In addition to the circuit court's admonishments on the record, the defendant also signed a plea of guilty form. This form provided that the defendant understood that he was giving up his rights to a trial, to confront witnesses, and to subpoena witnesses on his behalf. The plea of guilty form further provided that no threats or promises, other than the plea agreement, had been made to cause the defendant to plead guilty. The circuit court confirmed that the defendant had read, signed, and understood the form and did not have any questions about it. Upon further questioning by the circuit court, the defendant indicated that he wished to plead guilty and that no one had forced or threatened him into making the decision.

¶ 14     The State then provided the circuit court with a factual basis for the plea. The defendant, acting with others, and while armed with a .223-caliber semiautomatic rifle and a .380-caliber pistol, left a home located at 1906 Shomaker Drive in a car. The car drove slowly west in the direction of 1936 Shomaker Drive where Detrick was standing. As the car approached 1936 Shomaker Drive, a volley of shots was fired from the car, and the defendant participated in the shooting. The incident was recorded by a home video recording. Multiple shell casings, including .380 and .223 calibers, were found on Shomaker Drive and 20th Street, the street adjacent to 1936 Shomaker Drive. Detrick died as a result of a gunshot wound to the head. He was struck with a .22-caliber bullet which was "consistent with the .223 caliber gun that the defendant was armed with." The circuit court accepted, and plea counsel stipulated to, the factual basis for the plea.

¶ 15     After the State recited the factual basis, the parties waived the preparation of a presentence investigation report. The circuit court confirmed that the defendant did not have any questions for the court and that the defendant wished for the court to accept his guilty plea. The circuit court again confirmed that no one had threatened or forced the defendant to plead guilty. The circuit court accepted the defendant's plea and sentenced him to 20 years in the IDOC followed by 3 years

of mandatory supervised release. The circuit court then advised the defendant that he may file a motion to withdraw his plea within 30 days and that if the motion was denied, he may appeal such denial.

¶ 16    The defendant subsequently filed a *pro se* motion to withdraw guilty plea and vacate sentence. In this motion, the defendant alleged that he was not fully advised of his appeal rights that he gave up by pleading guilty. The defendant further alleged that plea counsel inadequately represented him and coerced him into pleading guilty. The defendant indicated that he wished to have a jury trial. Plea counsel filed a motion to withdraw as the defendant's attorney. Following a hearing, the circuit court allowed plea counsel to withdraw and appointed postplea counsel to represent the defendant.

¶ 17    Postplea counsel filed an amended motion to withdraw guilty plea and vacate sentence on behalf of the defendant. In the amended motion to withdraw guilty plea, the defendant contended that he pled guilty because of a misapprehension of facts, there was doubt as to his guilt, he had a defense worthy of consideration, and the ends of justice would be served by holding a trial. The defendant claimed that he did not knowingly and voluntarily enter his plea of guilty and alleged plea counsel provided ineffective assistance.

¶ 18    The defendant alleged, among other things, that he was innocent and regretted not exercising his right to a trial. In support of his ineffective assistance of counsel claim, the defendant alleged plea counsel failed to investigate the evidence and valid defenses to the charges against the defendant. Specifically, the defendant argued that Castillo and Latoya were two witnesses who would have provided exculpatory evidence on the defendant's behalf.

¶ 19    Postplea counsel field a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). Postplea counsel certified that he had consulted with the defendant to ascertain his

7

contentions of error, examined the trial court file and report of proceedings of the plea of guilty and sentencing, and made any amendments that were necessary for the adequate presentation of any defects in those proceedings.

¶ 20 At a hearing on the defendant's amended motion to withdraw guilty plea and vacate sentence, both plea counsel and the defendant testified. Plea counsel testified that he reviewed the discovery with the defendant between 5 and 15 times. Plea counsel estimated that he spent over 60 hours working on the defendant's case. Plea counsel testified that he discussed strategies with the defendant on multiple occasions. Plea counsel stated that the main theory of the case was self-defense and attacking the credibility of the State's witnesses. In investigating the case, plea counsel hired an investigator who obtained statements from Castillo and Latoya. Plea counsel indicated that he believed he shared these statements with the defendant and had considered their statements as part of counsel's trial strategy. Plea counsel believed Castillo would make a good rebuttal witness as to whether the defendant shot first but did not believe that Castillo's statement "would have made or broke the case." Plea counsel was aware that Gaines would testify that the defendant shot first. Plea counsel also believed Latoya was an important witness who could have helped the defendant's case. Plea counsel stated that Latoya's statement would have helped show that Terry may have been responsible for the shooting.

¶ 21 In plea counsel's opinion, however, the State had a strong case against the defendant. Plea counsel noted that the State had substantial ballistic evidence and recovered an AR-15 style rifle from near the house of the mother of the defendant's children. A photograph recovered from an iPad in the Lincoln depicted the defendant holding a gun that fit the description of the AR-15 style rifle recovered in this case. There were also witnesses who would have implicated the defendant, two individuals standing near Detrick when he was shot and neighbors who identified an individual

8

that fit the defendant's description. The State also had a video recording of the incident. Plea counsel indicated that the video was not good quality. Plea counsel confirmed, however, that the video corroborated Gaines's potential testimony and that it was considered when advising the defendant as to whether he should plead guilty. Plea counsel told the defendant it was unlikely that he would be acquitted based on self-defense and that the more likely outcome would have been second degree murder based upon an unreasonable belief of self-defense.

¶ 22    Plea counsel testified that he did not tell the defendant he had no other option than to plead guilty and that it was the defendant's decision to plead guilty. Plea counsel further testified that he was prepared for trial and "loved trials." Plea counsel advised the defendant to accept the State's plea because plea counsel believed it was in the defendant's best interest. If plea counsel thought the defendant could have prevailed at trial, plea counsel would have told the defendant so.

¶ 23    The defendant testified that plea counsel had talked with the defendant about self-defense and the fact that Castillo and Latoya had been interviewed, but not in detail. The defendant stated that he never saw the statements the investigator obtained from Castillo or Latoya. The defendant claimed that had he seen the statements, he would have changed his mind about pleading guilty.

¶ 24    Postplea counsel argued that the defendant maintained his innocence and that plea counsel had testified that his trial strategy was self-defense. Postplea counsel noted that Castillo and Latoya provided information that someone shot at the defendant first and that there was a plan to rob the defendant. Postplea counsel argued that this factored into a self-defense claim. Postplea counsel asserted that plea counsel did not consider these statements in his trial strategy. Postplea counsel contended the defendant had a valid self-defense claim and that the ends of justice would be served by allowing the defendant to have a trial.

9

¶ 25    After hearing the State's argument, the circuit court noted that the record spoke for itself and that it had considered the transcripts of "various court hearings" as well as the testimony of plea counsel and the defendant. The circuit court indicated that it had considered every issue raised by the defendant in his amended motion to withdraw guilty plea. The circuit court specifically indicated that it had considered the issue concerning Castillo and Latoya as potential witnesses. The circuit court found that there was no misapprehension of facts, no reasonable doubt as to the defendant's guilt, no defense worthy of consideration, and that the ends of justice would not be served by holding a trial in this case. The circuit court also found that the defendant had not shown plea counsel was ineffective. The circuit court denied the defendant's amended motion to withdraw guilty plea. This appeal follows.

¶ 26                              II. ANALYSIS

¶ 27    The defendant contends that postplea counsel failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), or, in the alternative, that counsel was ineffective in presenting the defendant's claim that he had a defense worthy of consideration. Rule 604(d) sets forth the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a plea of guilty. *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 29. Rule 604(d) provides, in relevant part, as follows:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court *** a motion to withdraw the plea of guilty and vacate the judgment.
>
>          ***
>
> The motion shall be in writing and shall state the grounds therefor. When the motion is based on facts that do not appear of record it shall be supported by affidavit ***. ***

*** The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 28    Counsel's certificate must strictly comply with Rule 604(d). *Curtis*, 2021 IL App (4th) 190658, ¶ 30. If the certificate does not strictly comply with the rule, a reviewing court must remand the case for the filing of a new motion and a new hearing on the motion. *People v. Janes*, 158 Ill. 2d 27, 33 (1994). Where counsel filed a facially valid certificate, we may consult the record to determine whether counsel fulfilled his or her obligations under the rule. *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 8.

¶ 29    Leave to withdraw a guilty plea is not granted as a matter of right, and, instead, the defendant must show a manifest injustice under the facts involved. *Curtis*, 2021 IL App (4th) 190658, ¶ 31. Withdrawal of a guilty plea is appropriate where the plea was entered through a misapprehension of the facts or of the law, where there is doubt as to the defendant's guilt, where the defendant has a defense worthy of consideration, or where the ends of justice will be better served through a trial. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). A guilty plea may also be withdrawn where plea counsel gives the defendant inadequate advice prior to entering the plea. *Curtis*, 2021 IL App (4th) 190658, ¶ 31.

¶ 30    Here, postplea counsel filed a facially valid Rule 604(d) certificate. The defendant argues, however, that the record refutes postplea counsel's assertion that he made any necessary

11

amendments to the *pro se* motion to withdraw guilty plea for the adequate presentation of the defects in the guilty plea proceedings. Specifically, the defendant argues that postplea counsel failed to support the allegation that the defendant had a defense worthy of consideration with any evidence, documents, or affidavits. The defendant further argues that postplea counsel failed to develop the defendant's claims beyond mere conclusory allegations.

¶ 31    In the amended motion to withdraw guilty plea, postplea counsel included claims that there was doubt as to the defendant's guilt and that he had a defense worthy of consideration. The amended motion contained allegations that the defendant maintained his innocence and regretted not exercising his right to a jury trial. The amended motion also contained an allegation, albeit under a claim of ineffective assistance of counsel, that Castillo and Latoya were two witnesses who would have provided exculpatory evidence on the defendant's behalf. Postplea counsel did not attach any affidavits or other supporting documents to the amended motion.

¶ 32    Castillo's written statement and a summary of Latoya's statement were, however, part of the record in this case. Furthermore, at the hearing on the defendant's amended motion to withdraw guilty plea, plea counsel testified that the theory of the defendant's case was self-defense[2] and to attack the credibility of the State's witnesses. Plea counsel further testified that he believed Castillo would have made a good rebuttal witness on the issue of whether the defendant shot first. Plea counsel also believed Latoya was an important witness because her statement indicated that Terry may have been responsible for the shooting. Despite this, plea counsel, after considering the State's

---

[2]A person is justified in the use of force in self-defense against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself against another's imminent use of unlawful force. 720 ILCS 5/7-1(a) (West 2018). The use of force that is intended or likely to cause death or great bodily harm is justified only where the person reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself, or another, or the commission of a forcible felony. 720 ILCS 5/7-1(a) (West 2018). A person may not claim self-defense if the person was an aggressor. *People v. Martinez*, 2019 IL App (2d) 170793, ¶ 70; 720 ILCS 5/7-1(b) (West 2018).

evidence against the defendant, apparently believed it was unlikely the defendant would have been acquitted based upon self-defense and advised the defendant as such.

¶ 33    Postplea counsel argued that the defendant could have asserted self-defense at trial and noted that Castillo and Latoya provided information that someone shot at the defendant first and that there had been a plan to rob the defendant. The circuit court indicated that it had considered the evidence and arguments presented, including the issue regarding the statements of Castillo and Latoya and whether there was a possible defense and a reason for the case to proceed to trial. Thus, the defendant's postplea claim that he had a defense worthy of consideration was based on the record and more fully developed at the hearing on the amended motion to withdraw guilty plea.

¶ 34    Relying on *Bridges* and *People v. Winston*, 2020 IL App (2d) 180289, the defendant contends that remand is necessary for strict compliance with Rule 604(d). In *Bridges*, postplea counsel amended the defendant's *pro se* motion to withdraw guilty plea to include detailed allegations that his plea was coerced because threats had been made against his mother and that his plea was not intelligently made due to issues with his mental health and not receiving the proper medication. *Bridges*, 2017 IL App (2d) 150718, ¶ 2. No affidavits supporting the allegations were attached to the amended motion. *Bridges*, 2017 IL App (2d) 150718, ¶ 2. Plea counsel filed a certificate of compliance with Rule 604(d). *Bridges*, 2017 IL App (2d) 150718, ¶ 2. The Second District noted that these allegations were not supported by the record, and, thus, postplea counsel was required to support the allegations by affidavit. *Bridges*, 2017 IL App (2d) 150718, ¶ 9. The Second District further noted that postplea counsel not only failed to attach an affidavit, but also failed to present the defendant's testimony or any other evidence in support of the defendant's motion. *Bridges*, 2017 IL App (2d) 150718, ¶ 9. As a result, the trial court had no basis for deciding the motion other than its own recollection of the defendant's demeanor during the plea

13

proceedings. *Bridges*, 2017 IL App (2d) 150718, ¶ 9. The Second District also found that the hearing on the motion failed to satisfy Rule 604(d) because postplea counsel did not offer any argument or evidence in support of the motion. *Bridges*, 2017 IL App (2d) 150718, ¶¶ 10-11.

¶ 35    In *Winston*, plea counsel filed an amended motion to withdraw guilty plea alleging that the defendant's plea was involuntary because the defendant was unaware that a felony conviction would have adverse consequences on her educational and employment opportunities. *Winston*, 2020 IL App (2d) 180289, ¶ 3. The amended motion further claimed that the defendant entered the plea under duress. *Winston*, 2020 IL App (2d) 180289, ¶ 3. Plea counsel also filed a certificate of compliance with Rule 604(d). *Winston*, 2020 IL App (2d) 180289, ¶ 4. At a hearing on the motion, plea counsel argued the evidence against the defendant was insufficient, and the defendant had given testimony to that effect. *Winston*, 2020 IL App (2d) 180289, ¶¶ 4-5, 15. This claim was not included in the defendant's amended motion to withdraw guilty plea. At the hearing, postplea counsel attempted to admit four handwritten statements to support this claim. *Winston*, 2020 IL App (2d) 180289, ¶¶ 8. The State objected, and the circuit court refused to admit the statements, offering postplea counsel an opportunity to continue the hearing to bring in witnesses. *Winston*, 2020 IL App (2d) 180289, ¶ 9. Postplea counsel declined the circuit court's invitation, stating that the statements were similar to what the defendant had testified to. *Winston*, 2020 IL App (2d) 180289, ¶ 9. The circuit court denied the motion to withdraw guilty plea, reasoning that, despite having the opportunity to present evidence to support her claim, the defendant had not done so. *Winston*, 2020 IL App (2d) 180289, ¶ 10.

¶ 36    *Winston* and *Bridges* are readily distinguishable from the case *sub judice*. In the defendant's case, Castillo's written statement and a memorandum summarizing Latoya's statement were part of the record. Furthermore, the defendant developed his claims at a hearing at

14

which plea counsel testified about self-defense as a trial strategy and how the statements of Castillo and Latoya factored into such a defense. There is no indication in the record, as in *Winston*, that the circuit court refused to consider the statements of Castillo and Latoya. Finally, postplea counsel argued that self-defense was a defense worthy of consideration and that the interest of justice would be served by allowing the defendant to have a trial.

¶ 37   In this case, despite any alleged inadequacy in the amended motion to withdraw guilty plea, postplea counsel developed the defendant's claims at the hearing on the amended motion and made argument as to why the defendant had a defense worthy of consideration. See, *e.g.*, *Curtis*, 2021 IL App (4th) 190658, ¶ 39 (finding that counsel "in essence" presented, at a hearing on the motion withdraw guilty plea, the circuit court with the claims the defendant argued were absent from the amended motion), *appeal denied*, 183 N.E.3d 902 (Nov. 24, 2021) (table); *People v. Kocher*, 2021 IL App (4th) 200610-U, ¶ 1 (holding that remand for compliance with Rule 604(d) was not required because during a "full and fair hearing" on the defendant's motion to withdraw guilty plea, the circuit court received evidence related to the defendant's allegations of error, and the evidence showed that the defendant could not establish a claim of ineffective assistance of counsel under the circumstances). Accordingly, we find that remand is not required in the present case.

¶ 38   Next, the defendant contends that postplea counsel provided ineffective assistance because counsel failed to adequately present the defendant's claim that he had a defense worthy of consideration and that the record supports such a claim. To establish a claim of ineffective assistance of counsel, the defendant must prove that counsel's performance was deficient and that such deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different.

15

*Strickland*, 466 U.S. at 694. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome. *People v. Smith*, 195 Ill. 2d 179, 188 (2000). If a defendant cannot prove prejudice, the reviewing court need not determine whether counsel's performance was deficient. *Smith*, 195 Ill. 2d at 188.

¶ 39   The defendant argues that the record contained evidence that he had a viable claim of self-defense and that he was not the initial aggressor. The defendant asserts the record contained the following evidence that led up to the shooting incident: (1) a dispute existed between the defendant and Gaines's family; (2) a plan to rob the defendant; (3) Terry slapping the defendant; (4) Terry driving past the defendant on a motorcycle and making a shooting motion with his hand; and (5) an alleged statement by Gaines that Terry shot at the defendant first.

¶ 40   Here, the record shows that the defendant cannot prove prejudice. The allegations of a plan to rob the defendant, Terry slapping the defendant, and Terry shooting at the defendant first were all part of Castillo and Latoya's statements. As stated above, the circuit court indicated that it had considered the issue of the statements provided by Castillo and Latoya as well as whether the defendant had a defense. Furthermore, during the hearing, plea counsel testified that there were witnesses who would have implicated the defendant —two individuals standing near Detrick when he was shot and neighbors who identified an individual who fit the defendant's description. We note that, at Turner's trial, Gaines testified that although he had consumed cocaine and "lean," he observed the defendant in the front seat of the vehicle, hanging out of the window with two pistols. Plea counsel acknowledged that Gaines would have testified that the defendant shot first. Plea counsel also acknowledged that the video recording would have corroborated Gaines's potential testimony and that he considered this when he advised the defendant of the consequences of pleading guilty.

16

¶ 41    Finally, the circuit court's statements during Turner's sentencing hearing are telling.[3] There, the circuit court stated that the evidence in Turner's case showed that there were four people in the car and that everyone was "loaded for bear, including somebody with an assault-style rifle." The circuit court further stated that the occupants of the car were "ready to commit something that should not have been done." As to the video recording, the circuit court recalled that "[t]he video showed the car backing out of the driveway, driving down the street, gun fire erupting, pulling around the block, returning near that house ***." The circuit court also recalled that the video showed shots were "fired back from that house." Thus, considering the record in this case, we do not find that the defendant could show that he was prejudiced by any alleged deficient performance on the part of postplea counsel.

¶ 42    For the foregoing reasons, we affirm the circuit court's judgment denying the defendant's amended motion to withdraw guilty plea.

¶ 43    Affirmed.

---

[3]The sentencing hearing for Turner's case is a part of the record on appeal. The same judge presided over both Turner's and the defendant's cases.