NOTICE

Decision filed 05/11/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241358-U

NO. 5-24-1358

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 24-CF-73 |
| | ) | |
| VICTOR X. HURD, | ) | Honorable |
| | ) | Michelle M. Schafer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER delivered the judgment of the court.
Justices Vaughan and Hackett concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm defendant's sentence where postplea counsel strictly complied with Illinois Supreme Court Rule 604(d) and where defendant's sentence was not excessive.

¶ 2   Defendant, Victor X. Hurd, pleaded guilty to a single count of unlawful possession with the intent to deliver a controlled substance, a Class 1 felony alleging defendant possessed between 1 and 15 grams of a substance containing cocaine (720 ILCS 570/401(c)(2) (West 2022)). After a sentencing hearing, defendant was sentenced to 12 years in the Illinois Department of Corrections. Defense counsel filed a motion to reconsider defendant's sentence, alleging his sentence was excessive. During the hearing on that motion, defense counsel argued that defendant's sentence was disproportionate to that of his codefendant, who had received a sentence of eight years to the Illinois Department of Corrections as a result of a sentencing hearing after his own plea of guilty.

1

The circuit court denied defendant's motion to reconsider. Defendant now appeals the denial of his motion to reconsider, claiming there was not strict compliance with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) and that, in the alternative, his sentence was excessive. See Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On January 29, 2024, defendant was charged by information with one count of unlawful possession with intent to deliver a controlled substance, a Class X felony alleging possession of 15-100 grams of a substance containing cocaine (720 ILCS 570/401(a)(2)(A) (West 2022)), one count of unlawful possession of methamphetamine with intent to deliver, a Class 1 felony alleging possession of between 5-15 grams of a substance containing methamphetamine (720 ILCS 646/55(a)(2)(B) (West 2022)), and two counts of armed violence, a Class X felony (720 ILCS 5/33A-2(a) (West 2022)), following the execution of a search warrant on 102 Kennedy Street, Colp, Illinois. On April 22, 2024, defendant entered an open plea to an additional count alleging unlawful possession with intent to deliver a controlled substance, a Class 1 felony alleging possession of between 1 and 15 grams of a substance containing cocaine. The other counts were dismissed pursuant to the plea. At that time, defendant, who had been detained in the Williamson County jail, was released on electronic home monitoring. That matter then proceeded to a sentencing hearing on July 9, 2024.

¶ 5      At that hearing, defense counsel first submitted a correction to the presentence investigation report, indicating that what the report showed as a conviction for possession of "pills, ecstasy, or an analog" was not a conviction, but that counsel had determined with the help of pretrial services that that conviction was instead a dismissal. As part of that correction, a documentary exhibit was added to the presentence report showing the basis for the corrections.

2

¶ 6    The State then called as a witness Corporal Logan Troxel of the Williamson County Sheriff's Office. Corporal Troxel testified that he was part of the drug enforcement unit and also part of an investigation into potential drug sales at 102 Kennedy Street in Colp, Illinois, which was a double-wide trailer. Corporal Troxel stated that the investigation started because the sheriff's office received complaints of several residences in Colp cooking and distributing crack cocaine, including the residence located at 102 Kennedy. Surveillance was placed on that residence and people coming from the residence were found to be in possession of crack cocaine. During post-arrest interviews, those in possession of the crack cocaine stated they had gotten the cocaine from 102 Kennedy and identified both defendant and his codefendant, LaShawn Walker, as selling from that residence. Defendant was identified in those interviews by his nickname, "Dreads."

¶ 7    Corporal Troxel testified that once the residence at 102 Kennedy, defendant, and his codefendant had been identified as a source of drug sales, confidential sources were used to purchase crack cocaine from 102 Kennedy. Based on those controlled buys, which utilized video recording devices hidden on the persons of the confidential sources, officers were able to observe codefendant Walker performing a transaction, identifying him based on his tattoos, as well as identifying what Corporal Troxel referred to as a "station" where drug deliveries could take place. At that station, there were equipment and supplies allowing for the cocaine to be weighed and packaged. Defendant was never seen delivering controlled substances during any of the controlled buy footage.

¶ 8    A search warrant was subsequently applied for and granted for the residence located at 102 Kennedy Street. That search warrant was then executed on January 26, 2024. Corporal Troxel testified that a perimeter was established around the address, and then an entry team knocked several times, announcing that the sheriff's office was there to execute a search warrant. No answer

3

was made to the knock and officers could hear what they believed to be running, and so the entry team forced entry into the residence. A flash bang was used upon entry and the residence was cleared. Corporal Troxel observed codefendant Walker attempting to escape out of a window. That escape attempt was unsuccessful. Walker was eventually taken into custody by the entry team from his hiding spot inside one of the residence's closets. Walker was in possession of a firearm when he was taken into custody. Defendant was located seated in the living room of the residence and taken into custody there. He made no attempts to escape or resist arrest. A firearm was located in plain view on the entertainment center located in that room. Corporal Troxel testified that 6.77 grams of methamphetamine was found in the floor of his patrol car where defendant had been detained, but also noted that defendant did not claim ownership of that methamphetamine.

¶ 9    During a search of the residence, officers located what Corporal Troxel described as a "large" amount of crack cocaine, powder cocaine, approximately $2,200 in cash, digital scales, packaging materials, and items for cooking powder cocaine into crack cocaine. A total of six firearms were found within the residence as well as a large amount of ammunition. Several of the firearms were found in and around the couch in the living room. Most of the cocaine found by officers was found in a hole in the wall of the bathroom that Corporal Troxel described as being "technically" underneath the bathtub.

¶ 10    Subsequent to his arrest, Corporal Troxel interviewed defendant. During that interview, defendant stated that he was from Chicago and came from there sometime in late November or early December 2023 to stay at 102 Kennedy with Walker, whom he stated was his cousin, although Corporal Troxel did not verify any blood relationship. Corporal Troxel testified that during that interview, defendant admitted to being part of the cooking and sale of drugs at 102 Kennedy. Defendant described the sales as being "dollar for dollar" sales, where one tenth of a

gram of cocaine was sold for $10. Defendant also described the manner in which the cocaine was acquired and cooked into crack cocaine. Defendant admitted to possession of two of the firearms found within the residence, a Glock 9-millimeter handgun and a short-barrel assault rifle. Earlier in his testimony, Corporal Troxel had identified the short-barrel assault rifle as an untraceable "ghost gun" without a serial number and specifically referred to it as a "chopper" which he defined as a street term for a short-barrel rifle. Based on a debit card with what Corporal Troxel described as gang art found within the residence, defendant was asked about possible gang associations and admitted to a prior affiliation with the Gangster Disciples around the age of 15 or 16.

¶ 11     The State requested the circuit court impose the maximum available sentence to the Illinois Department of Corrections (IDOC) of 15 years. In doing so, the State cited a number of factors in aggravation and the lack of several factors in mitigation. The State argued that defendant's conduct threatened serious physical harm, in part because of the large number of weapons and ammunition found within 102 Kennedy, which the State alleged were in the residence to protect the drugs and drug enterprise. The State also pointed to harms of drug distribution itself, arguing that defendant should have contemplated that his criminal conduct would cause or threaten harm to others based on the well-known harms of drug distribution and addiction. The State argued that a clear deterrent message needed to be sent that coming to southern Illinois to deal drugs was not an easy way to make money. The State emphasized that one of the firearms defendant possessed was an untraceable gun without a serial number.

¶ 12     Defendant, through his counsel, requested a sentence of probation, or, in the alternative, a minimum four year sentence. Defense counsel pointed out that defendant had no "significant" criminal history, having only been convicted of one felony and some misdemeanors. Defense counsel noted defendant was a father of two and that he had ended his gang affiliation when he

5

was in his early 20s and his son was born. Defense counsel pointed out that defendant was cooperative with police and argued that social science indicated that long sentences were not actually effective deterrents. Defense counsel argued that while defendant did have a previous violation of electronic monitoring case caused by his mother disconnecting his ankle monitor, as defendant had testified to at a prior hearing, he had been compliant with electronic monitoring in this case since being released at the time of his plea. Defense counsel argued that defendant had good family support and was unlikely to reoffend. Defendant gave a statement in allocution where he indicated that he was cooperative with police and had come to southern Illinois to see about getting a coal mining job, indicating he had interviewed but never received any return calls.

¶ 13     The circuit court ultimately sentenced defendant to a term of 12 years in IDOC, finding that a community-based sentence would deprecate the seriousness of the offense and would be inconsistent with the ends of justice. In imposing its sentence, the circuit court went through both the factors in aggravation and mitigation. The circuit court found that defendant had minimal criminal history but did have a pending petition to revoke his probation out of Cook County for his Class 3 theft conviction. The circuit court found that defendant did have two minor children, but that it appeared that he did not have much of a relationship with the elder child and the circuit court was unclear on how dependent the younger child was on his support. The circuit court indicated it believed that drugs were a serious problem in the community and that defendant's participation in the drug trade while in possession of a firearm without a serial number was conduct that threatened serious bodily harm. The circuit court stated that it could find no evidence that defendant's conduct was gang-related. The circuit court indicated that while it doubted that any sentence in this case would actually deter any future offenders, it still felt that deterrence was an important objective in rendering its sentence.

6

¶ 14    On July 24, 2024, defense counsel filed a motion to reconsider sentence on defendant's behalf. In that motion, defense counsel alleged that defendant's sentence was excessive in light of the mitigating factors present in his case, which were listed in the written motion and included that defendant had only one prior felony conviction, had never previously been sentenced to IDOC, had not been recorded delivering controlled substances during controlled buys, and cooperated with police, amongst other things. The original motion was not accompanied by a Rule 604(d) certificate, but on December 5, 2024, a facially valid certificate was filed. On that same date, a hearing on defendant's motion was held.

¶ 15    At that hearing, defense counsel first asked that the circuit court take judicial notice of codefendant Walker's case. Defense counsel indicated that Walker had pleaded guilty to the same charge as defendant and also proceeded to an open sentencing hearing where Walker was sentenced to eight years in IDOC. Defense counsel indicated the judicial notice was meant to "supplement" the written motion to reconsider, which made no allegations regarding Walker's sentence. During the hearing, defense counsel argued that defendant never brandished any weapons, only Walker was on video delivering any controlled substances, and that Walker was the more culpable of the two codefendants, despite receiving the lesser sentence. Defense counsel argued that the only difference between the two codefendants was that defendant had one prior felony conviction and emphasized that Walker had both attempted to flee police and been armed at the time of arrest while defendant had cooperated with police.

¶ 16    In response, the State argued that defendant had a more extensive criminal history than Walker, alleging that defendant was a convicted felon with 6 felony and 12 misdemeanor arrests while Walker only had a traffic ticket in his background. The State also pointed out that the circuit court had sentenced defendant to a lesser sentence than the State had requested at the sentencing

7

hearing. In rebuttal, defense counsel pointed out that the circuit had specified during sentencing that it was not taking into account arrests that did not result in convictions, and alleged that Walker had been sentenced after defendant, making Walker's sentence new information for the purpose of the motion to reconsider.

¶ 17 The circuit court denied the motion. In doing so, the circuit court noted that it had considered factors in both aggravation and mitigation. The circuit court stated that defendant had "a series of criminal convictions, the majority of which were misdemeanors" while Walker was younger and "had, in [the circuit court's] memory, zero, absolutely zero criminal history." The circuit court acknowledged Walker's attempted escape and hiding in a closet with a weapon during the execution of the search warrant, but also noted that defendant's seat in the living room had a wide variety of loaded weapons nearby. Finally, the circuit court indicated that based on the offense itself and the weapons found inside 102 Kennedy, it considered defendant, who was not from the community, to be a danger to the community.

¶ 18                                    II. ANALYSIS

¶ 19 On appeal, defendant raises two related claims of error. First, he claims that postplea counsel did not strictly comply with the requirements of Rule 604(d). Defendant asserts that the allegations and evidence, in the form of supporting affidavits, related to defendant's sentence being excessive as compared to his codefendant's lesser sentence were not raised in the written motion. He argues that they were only raised at the time of the hearing on defendant's motion, despite defense counsel having filed a facially valid Rule 604(d) certificate alleging that she had made any necessary amendments to the motion. Second, he claims that, while the proper course of action is to return this matter to the circuit court due to the lack of Rule 604(d) compliance, should we find that there was compliance, we should find that the 12 year IDOC sentence imposed by the circuit

8

court was excessive, vacate that sentence, and return the matter to the circuit court for a new sentencing hearing.

¶ 20                              A. Rule 604(d) Compliance

¶ 21    Rule 604(d) provides that, in order to appeal from a judgment entered on a guilty plea, a defendant must file in the trial court either a motion to reconsider his sentence or a motion to withdraw his guilty plea. Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). The attorney filing that motion on defendant's behalf must also

> "file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." *Id.*

Strict compliance with the certification requirement of Rule 604(d) is required and failure to do so results in a remand to the circuit court for the filing of a new motion and new hearing. *People v. Brown*, 2024 IL 129585, ¶ 48. A facially valid Rule 604(d) certificate will generally be sufficient to show compliance with Rule 604(d), but may be refuted by the record, requiring remand. *Id.* ¶ 49. Compliance with Rule 604(d) is reviewed *de novo*. *Id.* ¶ 48.

¶ 22    Here, defendant concedes that defense counsel filed a facially valid Rule 604(d) certificate, but argues that the record refutes that compliance because (1) the argument that defendant's sentence was disproportionate as compared to his codefendant's sentence did not appear in the written motion and (2) defense counsel attached no affidavits to that written motion including facts related to the codefendant's sentence. Defendant thus alleges that defense counsel did not, in fact,

9

amend the motion as necessary as alleged in the Rule 604(d) certificate. The State counters that the argument that defendant's sentence was disproportionate to his codefendant's sentence was not an entirely new claim that needed to be added to the written motion because that motion already alleged that defendant's sentence was excessive. It further argues that, even if there were deficiencies in compliance with Rule 604(d) with regard to both the written motion and the failure to include affidavits, that is cured by a line of cases holding that where a defendant was given a full and fair hearing for his claims, reversal is not required.

¶ 23   With regard to defendant's claim that Rule 604(d) was not strictly complied with due to the failure to allege in the written motion that defendant's sentence was disproportionate to his codefendant's sentence, we find that this was not an additional argument requiring amendment. In his written motion to reconsider, defendant's sole claim of error was that his "sentence of twelve (12) years in the Illinois Department of Corrections is excessive." The claim that defendant's sentence is excessive and that his sentence was disproportionate to his codefendant's sentence are, in essence, the same claim. This is made manifest by the answer to a single question: in what way is defendant's sentence disproportionate to his codefendant's? The answer is that it is *excessive* in comparison to his codefendant's lesser sentence. The claim here is similar to that of *People v. Gomez*, 2025 IL App (2d) 240655-U, where the defendant claimed that there was not strict compliance with Rule 604(d) because the written motion did not assert that the defendant was under the influence of drugs when he entered his plea of guilty. *Gomez*, 2025 IL App (2d) 240655-U, ¶ 59. The *Gomez* court found that defendant's claim that he was under the influence of drugs was not a new claim, because the written motion had specifically alleged that defendant's plea was involuntary. *Id.* ¶ 60. Much as we find here, the *Gomez* court concluded that what the defendant claimed was an additional argument was, instead, simply the "factual basis" for the claim explicitly

10

put forth in writing and was encompassed by the written claim of error. *Id.* Thus the argument that defendant's sentence was excessive was not materially different enough from the argument that defendant's sentence was disproportionate from his codefendant's to warrant an amendment to the written motion in order to comply with Rule 604(d).

¶ 24 Defendant also alleges that the record refutes defense counsel's facially valid Rule 604(d) certificate because there was no affidavit attached alleging the facts regarding his codefendant's sentence. Rule 604(d) does state that, "[w]hen the motion is based on facts that do not appear of record it shall be supported by affidavit." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). It is true that the facts regarding the codefendant's sentence do lie outside the record of this case, and thus properly should have been supported in the written motion by affidavit, but we find that under *People v. Shirley*, 181 Ill. 2d 359 (1998) and its progeny, defendant was given a full and fair hearing in front of the circuit court and remand is unnecessary.

¶ 25 In *Shirley*, a case that had previously been remanded due to the lack of a Rule 604(d) certification came before the Illinois Supreme Court again on the issue of strict compliance with Rule 604(d). *Id.* at 363-64. The Illinois Supreme Court rejected the defendant's argument, finding that strict compliance with Rule 604(d) did not require another remand. *Id.* at 367-72. Instead, the supreme court ruled that the strict compliance standard need not "be applied so mechanically as to require Illinois courts to grant multiple remands and new hearings following the initial remand hearing. Where, as here, the defendant was afforded a full and fair second opportunity to present a motion for reduced sentencing, we see limited value in requiring a repeat of the exercise, absent a good reason to do so." More specifically, the supreme court found that under the circumstances present in *Shirley*, "requiring another remand and hearing on the motion to reduce sentences would be an empty and wasteful formality."

11

¶ 26    Following *Shirley*, multiple appellate courts, including this one, have similarly found that where a defendant received a "full and fair" hearing, remand was not required by the strict compliance standard of Rule 604(d). See *Gomez*, 2025 IL App (2d) 240655-U; *People v. Brown*, 2023 IL App (4th) 220573; *People v. Cutler*, 2023 IL App (4th) 220689-U; *People v. Jackson*, 2022 IL App (5th) 200042-U; *People v. Jones*, 2021 IL App (4th) 180497-U; *People v. Kocher*, 2021 IL App (4th) 200610-U; *People v. Sibley*, 2023 IL App (5th) 220518-U. In several of those cases, remand was not required by the strict compliance standard despite the fact that, unlike *Shirley*, those cases had not been previously remanded for a second hearing to allow for strict compliance with Rule 604(d). See *Gomez*, 2025 IL App (2d) 240655-U; *Jackson*, 2022 IL App (5th) 200042-U; *Jones*, 2021 IL App (4th) 180497-U; *Sibley*, 2023 IL App (5th) 220518-U. In articulating when it is that a defendant has received a full and fair hearing that does not require remand, the Fourth District has stated that strict compliance with Rule 604(d) requires "substantive" as opposed to "technical" compliance. *Brown*, 2023 IL App (4th) 220573, ¶ 44, *Jones*, 2021 IL App (4th) 180497-U, ¶ 21, *Kocher*, ¶¶ 30-31. Notably, in *Brown*, the Fourth District held that not every failure to file a supporting affidavit requires remand. *Brown*, 2023 IL App (4th) 220573, ¶¶ 33, 44. Where the claim had been adequately, if not explicitly, raised in the written motion and the relevant facts were presented at a full and fair hearing, the error was technical rather than substantive. *Id.*

¶ 27    A similar situation to *Brown* occurred here. Defense counsel failed to attach any affidavits regarding the codefendant's sentence to the written motion. At the hearing, she asked the circuit court, which the record makes clear was the same court that had sentenced the codefendant, to take judicial notice of the codefendant's case. A court may properly take judicial notice of matters within the public record, including those of other courts. *May Department Stores Co. v. Teamsters*

12

*Union Local No. 743*, 64 Ill. 2d 153, 159 (1976). The sentence of a codefendant certainly falls within that sphere, especially where the court being asked to take judicial notice is the same one in front of whom the proceedings to be judicially noticed occurred. Furthermore, the circuit court clearly took into account the sentence of the codefendant in making its ruling denying defendant's motion to reconsider his sentence, as the circuit court explicitly stated the reasoning for the differing sentences. As such, defendant was not deprived of a full and fair hearing as a result of any failure to attach supporting affidavits, and no remand is needed.

¶ 28    Notably, while we conclude that there was strict Rule 604(d) compliance within the written motion with respect to the sentencing disparity contention, our analysis finding that defendant received a full and fair hearing applies to that issue as well. Defendant challenges the applicability of *Shirley* and its progeny to this issue, pointing to the supreme court's decision in *People v. Ratliff*, 2024 IL 129356, asserting in oral argument before this court that *Ratliff* stands for the proposition that when an argument is not laid out in a postplea motion, it is waived. We find that *Ratliff* is inapplicable to this case. First, we find that defendant did raise the issue of his allegedly disparate sentence in his written motion when he raised the issue of his allegedly excessive sentence. Second, in *Ratliff*, the challenged issue, that defendant had not been adequately admonished under Illinois Supreme Court Rule 401(a) prior to being allowed to proceed *pro se*, was never raised in any fashion before the trial court and was challenged for the first time at the appellate court level. *Id.* ¶¶ 3-28. Here, defendant argued before the circuit court that he received a disparate sentence at the hearing on his motion. It is not being raised for the first time on appeal. Finally, we note that just prior to releasing *Ratliff* our supreme court released its decision in *Brown*, 2024 IL 129585. In *Brown*, the supreme court expressly found that that defendant was granted a "full and fair" opportunity to raise his post plea claims before the trial court, showing strict compliance with Rule

13

604(d). *Id*., ¶¶ 53-54. *Brown* explicitly reaffirms *Shirley* and its progeny, placing our application of those same principles to the allegations of error on a solid foundation that *Ratliff* does not undermine. As such, we find defendant's reliance on *Ratliff* in this instance misplaced.

¶ 29                                B. Excessive Sentence

¶ 30    If we find, as we have, that there was strict compliance with Rule 604(d) and the matter need not be remanded for further hearing, defendant asks that we find the circuit court's 12-year sentence excessive and either reduce the sentence or vacate it and remand the matter for a new sentencing hearing. Specifically, defendant asserts that the circuit court did not adequately take into consideration the mitigating factors applicable to his case and his more culpable codefendant's lesser eight-year sentence.

¶ 31    A reviewing court may reduce a defendant's sentence when it finds that a lower court abused its discretion, finding that the sentence imposed was " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). A lower court's sentence is entitled to great deference and a reviewing court should not substitute its judgment for that of the lower court absent an abuse of discretion, as that court was in the best position to weigh the factors relevant to sentencing, such as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." (Internal quotation marks omitted.) *Id.* A sentencing court has broad discretion in fashioning an appropriate sentence and where a sentence falls within statutory bounds, it is presumed that the sentence is appropriate. *People v. Gooch*, 2014 IL App (5th) 120161, ¶¶ 8-9.

¶ 32    Here, defendant faced a sentence of either probation or between 4 and 15 years in IDOC and received a 12-year sentence. 720 ILCS 570/401(c)(2) (West 2022), 730 ILCS 5/5-4.5-30 (West

14

2022). Defendant claims that this sentence is excessive, with the circuit court not adequately taking into account defendant's "minimal" criminal history, support to and from his family, that he never appeared in the controlled buy footage, that he was cooperative with police, that his actions neither caused nor threatened serious harm, and that defendant had been compliant with home monitoring while awaiting sentencing. A sentencing court is presumed to consider all evidence presented in mitigation and the record in this matter certainly supports that the circuit court did just that. *People v. Newbill*, 374 Ill. App. 3d 847, 854 (2007). What defendant essentially asks for is that we set aside our deference for the circuit court's sentence and impose our own judgment. We decline to do so. We find no abuse of discretion where the circuit court simply did not weigh the mitigating factors applicable to the case with the weight that defendant desired. It is not the function of the appellate court to reweigh the statutory factors applicable to a case. *Alexander*, 239 Ill. 2d at 214-15.

¶ 33    Defendant also claims his sentence was excessive due to its disparity with the eight-year sentence received by his codefendant. Defendant argues that his codefendant was the more culpable party, pointing to his codefendant's attempts to flee police while armed during execution of the search warrant and his codefendant's identifiable role distributing controlled substances in the controlled buy videos. Codefendants who are similarly situated may not be subjected to arbitrary unreasonable disparities in their sentences. *People v. Caballero*, 179 Ill. 2d 205, 216 (1997). However, the simple fact of a disparity does not, by itself, establish a violation. *Id.* Differences in backgrounds, prior criminal history, potential for rehabilitation and involvement in the offense may all serve to provide a basis for differing sentences between codefendants. *People v. Buie*, 217 Ill. App. 3d 786, 790 (1991). Disparate sentences between codefendants are, much

like other excessive sentencing claims, reviewed for abuse of discretion. *People v. Stroup*, 397 Ill. App. 3d 271, 274 (2010).

¶ 34    Here, the codefendants were not similarly situated, due to differences in criminal history and the specific weapons possessed by each defendant. In ruling on defendant's motion to reconsider his sentence, the circuit court made the following statements, outlining some of its thinking with regard to the disparity in the sentences between the codefendants:

> "I recall the testimony of Officer Troxel, and not only the activities or the actions of Mr. Walker, which [defense counsel] has brought up, trying to jump out of a window, being caught, hiding in a closet with a gun in his possession, I also, however, recall Mr. Hurd sitting in the living room when the flash bang, if you will, pursuant to Officer Troxel's testimony, went off. Wherein there was a loaded chambered gun on a coffee table, under the couch, behind the couch, and one of these guns called a chopper, I guess it's rigged so that it doesn't have a full stock, and you shoot from your shoulder upon lifting. I also recall considering the time that I took to read through everything in relation to both Mr. Hurd and Mr. Walker when these sentences occurred, and I do recall Mr. Walker had, in my memory, zero, absolutely zero criminal history."

It is clear based on the record that the circuit court sentenced defendant and his codefendant differently based on factors that rendered them dissimilarly situated and we find no abuse of discretion in the sentencing disparity.

¶ 35                                III. CONCLUSION

¶ 36    For the foregoing reasons, we affirm the judgment of the Circuit Court of Williamson County.

¶ 37    Affirmed.

16