NOTICE

Decision filed 09/19/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210429-U

NO. 5-21-0429

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Effingham County. |
| | ) | |
| v. | ) | No. 17-CF-203 |
| | ) | |
| AARON WILKEY, | ) | Honorable |
| | ) | Allan F. Lolie, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:    A second remand for compliance with Illinois Supreme Court Rule 604(d) is not required where the trial court received evidence related to defendant's allegations of error during a full and fair evidentiary hearing on defendant's motion to withdraw guilty plea, and no additional evidentiary support would have salvaged defendant's claim because his own testimony rebutted the claim.

¶ 2    Defendant, Aaron Wilkey, appeals the trial court's denial of his postplea motion to withdraw his guilty plea. On appeal, he argues that his counsel failed to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    On June 5, 2017, defendant was charged by information with one count of predatory criminal sexual assault of a child in violation of section 11-1.40(a)(1) of the Criminal Code of 2012 (720 ILCS 5/11-1.40(a)(1) (West 2016)). The information alleged that defendant knowingly

1

committed an act of sexual contact with L.W., who was under the age of 13 at the time, when defendant inserted his finger in L.W.'s vagina for the purpose of defendant's sexual arousal. A grand jury returned a bill of indictment on the same charge.

¶ 5     On September 21, 2017, defendant agreed to plead guilty to predatory criminal sexual assault of a child in exchange for the State's agreement to cap sentencing to no more than 30 years' imprisonment. After confirming consultation and agreement by the victim's family, the court admonished defendant and found defendant knowingly and voluntarily entered the plea agreement. The court then accepted the plea and ordered a presentence investigation report (PSI).

¶ 6     The PSI was filed on November 3, 2017, and listed defendant as a 27-year-old who had a previous plea of guilty for reckless conduct in 2010. When asked about his physical health, defendant advised of having corrective lenses and ringing in his ears. He reported his overall health was "good," but had occasional pain in his left shoulder and back. He last received treatment for his back in 2015.

¶ 7     Defendant also reported a long history of receiving mental health counseling at Heartland Human Services (Heartland). The Heartland records revealed defendant first sought treatment in April 2001 after "hearing voices." He was seen 11 times between April 23, 2001, and August 17, 2001, before he stopped appearing for his appointments. Defendant returned to Heartland in May 2010 for a mental health evaluation, which resulted in no recommendations for treatment. Defendant reengaged at Heartland on August 20, 2013, with complaints of "depression and difficulty concentrating." He was diagnosed with major depression and prescribed Wellbutrin. A month later he was prescribed Adderall to help with concentration. He attended his monthly medication appointments and reported no new symptoms until January 13, 2014, when he reported "homicidal ideations" regarding his ex-girlfriend. The counselor eventually determined defendant

2

was not going to act on his thoughts and the monthly monitoring continued. During the remaining appointments, defendant focused on his problems with his ex-girlfriend, children, DCFS, and the court. He stopped attending his monthly medication appointments on July 25, 2014, without explanation. On April 14, 2015, defendant completed another mental health assessment at Heartland and was diagnosed with anxiety disorder and ADHD. Defendant attended five therapy sessions between May 25, 2015, and July 28, 2015. Thereafter, he stopped attending therapy without explanation.

¶ 8     When asked about his current mental health, defendant reported concerns about his emotional stability and said, "I hear voices." When asked to elaborate, defendant reported hearing voices in his head telling him to "do bad things or hurt people." He stated he had been hearing voices since the fifth grade and the voices caused him to be more standoffish and also caused a lot of anxiety. He stated the voices never caused him to harm anyone, but he was concerned about controlling his actions. He blamed his mental health problems for his current legal troubles, stating that if he had taken care of his mental health years ago, he would not be in this situation. Defendant declined to elaborate but stated he knew he should have gotten help before this point. Defendant reported that his mother had depression and was bipolar. He stated that the side effects she experienced from the medication caused him to avoid seeking help.

¶ 9     As to the current case, defendant reported no memory of the offense and stated the victim would come into his room at night. His prior statement to the investigating officer indicated he "probably had sex with L.W. when he was asleep because he's 'frisky' when he's asleep." While defendant did not acknowledge any memory of the offense, he stated that he accepted full responsibility and felt bad about the harm he caused.

¶ 10　　Attached to the PSI was a police report authored by Detective Aaron Lange that summarized defendant's three-hour interview. The report indicated that defendant "displayed anger, sadness and said he had powerful voices in his head that tell him to violently kill people." Defendant referred to killing people as a "blood bath." Defendant advised the officers that he thought about taking Detective Lange's firearm and shooting him in the head with it, strangling Officer Deters with his necktie, and taking Officer Griffith's glasses and sticking them in her eye sockets into her brain. Defendant stated that he probably had anal sex with the victim while he was asleep. He admitted rubbing the victim's vagina on 35 separate occasions.

¶ 11　　The sentencing hearing was held on November 13, 2017. After the parties presented their evidence—including the PSI—and arguments, the court sentenced defendant to 30 years' imprisonment to be followed by a sentence of 3 years to life of mandatory supervised release. The court credited defendant 165 days served and noted the sentence would be served at 85%.

¶ 12　　On December 7, 2017, defendant filed a *pro se* motion to withdraw guilty plea and vacate sentence, raising claims of ineffective assistance of counsel. On May 24, 2018, the trial court allowed defendant's plea counsel to withdraw based on defendant's allegation of ineffective assistance of counsel. Thereafter, the court appointed postplea counsel.

¶ 13　　On November 19, 2018, postplea counsel filed an amended motion to reconsider sentence and a Rule 604(d) certificate. The court denied the motion to reconsider, and defendant appealed.

¶ 14　　In the initial direct appeal, this court agreed with defendant that remand was required because the trial court failed to properly admonish him of his appeal rights pursuant to Illinois Supreme Court Rule 605(c) and his postplea counsel's certificate of compliance, filed pursuant to Illinois Supreme Court Rule 604(d), was deficient. As such, this court remanded the case for strict

4

compliance with the rules. *People v. Wilkey*, No. 5-19-0005 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 15    On May 21, 2020, postplea counsel filed a motion to withdraw guilty plea and vacate judgment. The motion alleged that subsequent to defendant's conviction, he was diagnosed with schizophrenia and further contended defendant's mental state at the time of his plea was such that he was not mentally capable of entering a knowing, voluntary, and intentional plea. No affidavit or documentation was attached to the pleading. At a status hearing on June 30, 2020, postplea counsel requested a continuance because he was "going to file an amended motion with some more detail" and he was "working on getting some medical records and Mr. Scales [the Effingham County Assistant State's Attorney] and I are thinking we'll likely be able to have some stipulations that avoid the need for bringing in some expert medical testimony" related to defendant's fitness at the time he took the plea. At the August 17, 2020, status hearing, postplea counsel advised the court that he believed he and the State were going to resolve most of the factual issues by agreement to make it a little bit faster.

¶ 16    The parties returned on October 6, 2020. Postplea counsel advised he was waiting on medical reports that he expected soon. The matter was set for another status hearing on December 8, 2020, at which time postplea counsel advised the court that he was waiting for medical records. A similar request was made by postplea counsel on March 2, 2021.

¶ 17    At the August 4, 2021, status hearing, the court noted postplea counsel's previous request for continuance "to investigate the necessity of medical records that might exist before filing a 604(d), or an amendment to the Motion to Withdraw that previously had been filed in that case" and asked postplea counsel, "[D]o you still need medical records to proceed in that case?" Postplea counsel responded, "I don't believe so, Your Honor. After having taken a look at some issues and

case law since then, at this point, I believe we are going to be ready to proceed with a hearing[,] but I would like one additional pretrial with my client present." The pretrial was set for September 9, 2021. On that date, postplea counsel confirmed that he had spoken with his client and the case was set for hearing.

¶ 18 On the same day as the hearing on defendant's motion to withdraw guilty plea, October 26, 2021, postplea counsel filed another Rule 604(d) certificate. At the hearing, counsel confirmed that no amended pleading was filed after May 2020, and called defendant to testify. Defendant stated that he believed, at the time the plea was entered, that he was capable of understanding the proceedings and he was willingly entering into a plea that he understood. He no longer believed he was mentally capable to fully understand what, if anything, was going on when the guilty plea was entered. Defendant explained that he was "under mental duress and was not on proper medication" at that hearing. "Since being put on proper medication after being locked up in IDOC, it was as if a mist had cleared from my mind[,] and I realized that I wasn't really certain what was going on around me." He further explained that his mental duress stemmed from hearing voices in his head and believing that he may have hurt someone that he loved very much, namely, his daughter, the victim in this case. Defendant testified that he discussed his mental state with his plea counsel and plea counsel asked him if he was mentally fit. In response, defendant advised plea counsel that he "believed that he was."

¶ 19 Defendant testified that he received mental health treatment at the Illinois Department of Corrections and was prescribed Zoloft for depression and Risperdal for schizophrenia. After he began taking the medication, defendant came to understand that he "wasn't really in the right state of mind to make the kind of decisions that I was being asked to make at the time." He stated that medication did not stop the voices, but they were now more "background noises than in the

foreground." He stated the voices sometimes affected his behavior but did not recall the voices telling him anything as to whether or not to enter a plea in September 2017.

¶ 20    Defendant testified that the PSI notation of the long history of attending mental health counseling at Heartland was correct, and he began hearing voices in April 2001. He stated that he stopped taking the medication prescribed as part of his treatment because he lost his job due to an injury on the job. He was on workers' compensation, but he could no longer afford to go to his appointments when that was done. Defendant stated that his concerns about his mental health expressed to the PSI investigator were true and he believed that if his mental issues had been previously addressed, he would not be in the current situation. He further agreed that he was concerned about taking medication for his mental health after watching his mother deal with the side effects of her medication.

¶ 21    Defendant stated that he and plea counsel never discussed his mental state as a potential defense for his case. He stated that he did not believe he would have entered into the negotiated plea in September 2017 if his mental health concerns had been timely addressed. He confirmed that he never informed plea counsel that he believed he was mentally unfit and that he never raised any concerns about his mental health when the court accepted his plea. This was because at that time, defendant believed he was competent. Postplea counsel requested the court take judicial notice of the PSI and the court responded affirmatively and stated it would also consider the transcripts from the plea and sentencing hearings that were provided by the State. Thereafter, the defense rested.

¶ 22    The State called defendant's plea counsel, Scott Schmidt, who confirmed he was appointed to, and did, represent defendant throughout the entirety of the case. He agreed that he spent several hours with defendant. Mr. Schmidt did not recall having any concerns about defendant's mental

7

health but stated his representation was a long time ago and he had not looked at his file prior to the hearing. Mr. Schmidt never questioned defendant's competency to make the decision he made. He did not ask for a fitness evaluation—despite routinely filing motions to appoint psychologists for such evaluation—because he had no *bona fide* doubt about defendant's fitness. He believed defendant understood what was going on. Mr. Schmidt discussed the partially negotiated plea with defendant prior to defendant entering the plea and believed that defendant knew what he was doing when he entered the plea. Mr. Schmidt remembered defendant received a cap on the prison sentence in exchange for the plea. He stated that the purpose of the negotiated cap was to limit defendant's exposure to the upper end of the sentencing range, and it was important that defendant "understand what we were doing, and I believe that he did." Thereafter, the State rested. Both sides presented argument and the court took the matter under advisement.

¶ 23    On November 24, 2021, the trial court issued an order stating the court had a very specific memory of the case because it was previously reversed on appeal. It found defendant "understood what he was doing and freely and voluntarily entered his guilty plea. *** Defendant never equivocated when answering the court's questions during his guilty plea." The order noted the conflicting testimony between defendant and plea counsel and found plea counsel more credible based on the court's prior observation of counsel erring on the side of caution when fitness to stand trial issues arose. The court had "no doubt" defendant "knowingly, freely and voluntarily entered his guilty plea" and denied defendant's motion to withdraw his guilty plea. Defendant timely appealed.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, defendant argues that his postplea counsel failed to comply with Rule 604(d)

(Ill. S. Ct. R. 604(d) (eff. July 1, 2017)). Rule 604(d) provides, where a defendant files a motion

to withdraw his guilty plea or reconsider the sentence,

> "The defendant's attorney shall file with the trial court a certificate stating that the
>
> attorney has consulted with the defendant either by phone, mail, electronic means
>
> or in person to ascertain defendant's contentions of error in the sentence and the
>
> entry of the plea of guilty, has examined the trial court file and both the report of
>
> proceedings of the plea of guilty and the report of proceedings in the sentencing
>
> hearing, and has made any amendments to the motion necessary for adequate
>
> presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1,
>
> 2017).

¶ 26    The purpose of Rule 604(d) is

> " 'to ensure that before a criminal appeal can be taken from a guilty plea, the trial
>
> judge who accepted the plea and imposed sentence be given the opportunity to hear
>
> the allegations of improprieties that took place outside the office proceedings and
>
> *dehors* the record, but nevertheless were unwittingly given sanction in the
>
> courtroom. *** A hearing under Rule 604(d) allows a trial court to immediately
>
> correct any improper conduct or any errors of the trial court that may have produced
>
> a guilty plea.' " *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 39-40 (2011)
>
> (quoting *People v. Wilk*, 124 Ill. 2d 93, 104 (1988)).

"Because Rule 604(d) is designed both to protect defendant's due process rights and to eliminate

unnecessary appeals, this court requires strict compliance with its requirements, including the

filing of the attorney certificate in the trial court." *People v. Shirley*, 181 Ill. 2d 359, 362 (1998). A facially valid certificate, however, is not dispositive, and the record may rebut counsel's statement that he or she fulfilled the obligations under Rule 604(d). *People v. Diaz*, 2021 IL App (2d) 191040, ¶ 23. Defendant does not argue that his postplea counsel's Rule 604(d) certificate was facially insufficient. Instead, defendant argues that the record rebuts the certificate where postplea counsel failed to attach an affidavit to the motion to withdraw his guilty plea. Our standard of review when addressing whether counsel complied with Rule 604(d) is *de novo*. *People v. Wilmington*, 2013 IL 112938, ¶ 26 (citing *People v. Thompson*, 238 Ill. 2d 598, 606-07 (2010)).

¶ 27    Rule 604(d) states that when a motion to reconsider sentence or a motion to withdraw a guilty plea "is based on facts that do not appear of record it shall be supported by affidavit unless the defendant is filing the motion *pro se* from a correctional institution." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). There is no dispute that postplea counsel's motion failed to contain an affidavit; the issue is whether the omission requires this court to again remand the case for further proceedings.

¶ 28    While remand has been required when no affidavit is attached to motion to withdraw a guilty plea (*People v. Stiff*, 2022 IL App (3d) 200013-U, ¶¶ 17-32), not all courts agree and instead have held that the failure is excused where counsel developed and supported defendant's claims at the hearing. *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 39 (although counsel failed to present an argument in the motion to withdraw guilty plea, there is no reversible violation of Rule 604(d) where counsel essentially presented the argument at the hearing); *People v. Jackson*, 2022 IL App (5th) 200042-U, ¶¶ 36-37 (although counsel failed to attach affidavits to motion to withdraw the guilty plea, remand is not required because there was no indication the court refused to consider the alleged witness statements and counsel developed the claim at the hearing through plea

10

counsel's testimony about how the witness statements factored into a potential self-defense trial strategy).

¶ 29 The parties focus their arguments on the cases of *People v. Bridges (Bridges I)*, 2017 IL App (2d) 150718, and *People v. Bridges (Bridges II)*, 2021 IL App (2d) 190778-U. In *Bridges I*, counsel failed to file an affidavit in support of the motion to withdraw the guilty plea, ensure defendant appeared at the motion hearing, or present any testimony or evidence in support of the motion. *Bridges I*, 2017 IL App (2d) 150718, ¶¶ 9-11. The numerous failures by postplea counsel amounted to a hearing that was nothing more than a charade and therefore remand was required. *Id*. ¶¶ 11-12. In *Bridges II*, after an affidavit was attached to the motion and evidence was presented in support of the claims at the evidentiary hearing, the court found no further remand was necessary despite postplea counsel's failure to include documentation regarding defendant's mental illness where the record confirmed that a full and fair hearing was held in the previous remand. *Bridges II*, 2021 IL App (2d) 190778-U, ¶ 23. However, neither case addressed the specific issue here, which involves a facially compliant 604(d) certificate, a failure to attach an affidavit to an amended motion to withdraw a guilty plea filed on remand, and a hearing on the amended motion in which testimony was presented.

¶ 30 We defer to the Illinois Supreme Court in *People v. Shirley*, 181 Ill. 2d 359, 369 (1998), which rejected the premise that strict compliance with Rule 604(d) required Illinois courts to grant multiple remands and a new hearing following the initial remand hearing. "Where, as here, the defendant was afforded a full and fair second opportunity to present a motion for reduced sentencing, we see limited value in requiring a repeat of the exercise, absent a good reason to do so." *Id*. Once the court has afforded defendant a second opportunity to be heard on his motion to withdraw the guilty plea based on noncompliance with Rule 604(d), "there is no further

11

requirement under Rule 604(d) that successive remands and rehearings will be ordered" for technical noncompliance of the rule. *Id.* at 371; see also *People v. Evans*, 2017 IL App (3d) 160019, ¶ 24 (interpreting *Shirley* to stand "for the proposition that where a defendant receives a full and fair hearing, technical compliance with Rule 604(d) need not give rise to multiple remands").

¶ 31    Failure to attach an affidavit on remand for a 604(d) violation is a technical error rather than a substantive error. *People v. Kocher*, 2021 IL App (4th) 200610-U, ¶ 31. Therefore, the issue becomes whether defendant was provided a full and fair second opportunity to present his claims of error to the trial court. *Id*. Defendant is "entitled to a hearing that is *meaningful*, but only in the very limited sense that it is not a mere charade performed for the purpose of reinstating an appeal." (Emphasis in original.) *People v. Tejada-Soto*, 2012 IL App (2d) 110188, ¶ 14.

¶ 32    Defendant argues that his evidentiary hearing was "essentially perfunctory" because postplea counsel "failed to produce any evidence other than [defendant's] testimony." Defendant contends that he is not an expert and therefore his testimony was limited to providing his diagnosis and what occurred after he was provided proper medication.[1] We disagree.

¶ 33    The record here included the PSI, which noted the history of defendant hearing voices and his mental illnesses. Postplea counsel relied on this information to argue for withdrawal of defendant's plea at the hearing. Defendant also testified as to his mental state during the guilty plea, the effect of medication, and his current belief regarding how his mental illness impacted his decision to plead guilty. He was in the best position to provide testimony regarding his prior belief of mental fitness at the hearing and his subsequent mental health after being diagnosed and

---

[1]We note, as argued by counsel at oral argument, the only issue on appeal is whether postplea counsel complied with Rule 604(d). Rule 604(d) provides no requirement as to what evidence postplea counsel must submit at a postplea evidentiary hearing. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Defendant also has not argued that postplea counsel was ineffective under in *Strickland v. Washington*, 466 U.S. 668 (1984). As such, we consider postplea counsel's performance at the hearing only to see if defendant was afforded a full and fair hearing on the merits of his claims.

provided medical treatment for his schizophrenia. While the State argued about the lack of documentation supporting defendant's testimony at the motion hearing and the court found plea counsel more credible, nothing in the trial court's order disputed defendant's testimony regarding his current mental health diagnosis. As such, we find there was a full and fair hearing on the merits of defendant's claims. See *Tejada-Soto*, 2012 IL App (2d) 110188, ¶¶ 14-16 (found a full and fair hearing was held on defendant's motion to withdraw the guilty plea where postplea counsel filed an amended motion and relied on defendant's testimony to argue such motion, despite defendant's claim that counsel should have presented another witness in support of his allegations).

¶ 34    Importantly, defendant's own testimony at the evidentiary hearing revealed that any remand to allow for further amendment would be futile. See *Diaz*, 2021 IL App (2d) 191040, ¶ 35. Defendant admitted he did not recall the voices in his head providing any direction as to whether he should or should not plead guilty. Further, even after claiming the medication cleared "the mist," defendant conceded that the medication did not remove the "voices." As such, no amendment on remand can salvage his claim that schizophrenia rendered him incompetent to plead guilty. See *Kocher*, 2021 IL App (4th) 200610-U, ¶ 26 ("the evidence presented at the hearing on defendant's motion demonstrates that no amendments were necessary because no amendments could have salvaged his meritless claims"); see also *People v. Cutler*, 2023 IL App (4th) 220689-U, ¶ 67 (declining to allow second remand to allow counsel to attach transcripts of phone calls where defendant's testimony addressed the omitted evidence).

¶ 35    Accordingly, we hold that a second remand requiring another hearing would be an empty and wasteful formality where there was a full and fair hearing on defendant's claims. As no argument was raised regarding the trial court's ultimate conclusion to deny defendant's motion to withdraw guilty plea, we affirm the trial court's order.

¶ 36                                    III. CONCLUSION

¶ 37    A full and fair hearing was held on defendant's claim that his schizophrenia—diagnosed after his guilty plea—interfered with his ability to enter a knowing, voluntary, and intentional plea. Based on defendant's testimony regarding the fact that the voices did not influence his decision to plead guilty, as well as plea counsel's testimony regarding defendant's competence and understanding, we find no amendment on remand can salvage defendant's claim that schizophrenia rendered him incompetent to plead guilty. Therefore, we affirm the trial court's judgment.


¶ 38    Affirmed.