2025 IL App (2d) 240655-U
No. 2-24-0655
Order filed September 18, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21-CF-1711 |
| | ) | |
| RONNIE GOMEZ, | ) | Honorable |
| | ) | John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Denial of defendant's motion to withdraw his guilty plea as unknowing and involuntary was proper because (1) there was no indication during the plea proceeding that defendant was, as he claimed, under the influence of phencyclidine (PCP) and (2) postplea counsel's failure to amend the motion to specifically allege that defendant was under the influence of PCP during the plea proceeding, or provide affidavits or other documents to support the PCP claim, did not violate Rule 604(d) where defendant had a full and fair hearing on that claim and presented supporting evidence.

¶ 2    Defendant, Ronnie Gomez, pleaded guilty to aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2020)) and was sentenced to 7 days in jail, with credit for time served, and 48 months' probation. Defendant moved to withdraw his guilty plea and vacate the judgment

on the basis that his plea was not knowing and voluntary. Following a hearing, the trial court denied the motion. Defendant timely appealed. On appeal, defendant contends that (1) the court erred in denying his motion to withdraw his guilty plea because the plea was not knowing and voluntary where he was under the influence of the hallucinogenic drug phencyclidine (PCP) at the time of the plea, and, alternatively, (2) postplea counsel failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023) where the record refutes her certification that she made any amendments to the postplea motion necessary for an adequate presentation of any defects in the guilty plea proceedings. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                               A. The Indictment

¶ 5     On November 1, 2021, defendant was indicted on two counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2020)). Each count alleged the same act—that defendant touched the victim's buttock with his hand for his own or the victim's sexual arousal or gratification—but alleged a different victim, each under the age of 13. The act alleged in count I occurred on or about November 7, 2020, through July 18, 2021. The act alleged in count II occurred on or about May 21, 2019, through May 20, 2021. Each offense was a Class 2 felony (*id.* § 11-1.60(g)).

¶ 6                              B. Fitness Evaluation

¶ 7     On November 1, 2023, defendant appeared with Assistant Public Defender Nicole Salonen. Salonen advised the trial court that a sex offender evaluation had been completed. Salonen indicated that she had "been on this case for some time" but that defendant had been "incarcerated in Cook County for a large period so he was not being brought into court on this matter." She stated that she met with defendant that morning and believed, based on their conversation, that a

fitness evaluation should be conducted. Salonen explained that defendant was unable to answer questions about the roles of various individuals in the courtroom or explain the process of a jury trial. He also did not understand the charges that he faced. The State did not object to an evaluation. The court ordered a pretrial fitness evaluation and continued the matter to January 10, 2024.

¶ 8     The fitness evaluator submitted a "Fitness to Stand Trial Evaluation" dated December 21, 2023 (fitness evaluation). The evaluator relied in part on information derived from a prior "Kane County Diagnostic Center, Psychosexual Evaluation, dated October 6, 2023." The evaluator ultimately concluded that defendant "demonstrated an ability to understand the nature and purpose of the proceedings against him and to assist in his defense." The fitness evaluation included information about defendant's drug history, *e.g.*, that he "began using marijuana laced with PCP at 25 years of age," "sought treatment at Gateway Foundation" in 2022, and "had been using the drug daily until one week prior to September 2023." Defendant reported that he had not used PCP "since September 2023." According to the fitness evaluation, "[defendant] provided contradictory information regarding the effect that the drug had on him[ ] but ultimately described experiencing euphoric feelings and sleeplessness." "[Defendant] expressed that he did not feel like he currently needed substance abuse treatment" and "denied using any other drugs or abusing prescription medications."

¶ 9                                C. Guilty Plea Proceedings

¶ 10    On January 10, 2024, defendant appeared with Salonen and Assistant Public Defender Seth McClure. The State advised the trial court that the parties had reached a plea agreement under which defendant would plead guilty to one count of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)) with an agreed sentence of 48 months' sex offender probation and 7 days in jail with credit for time served. The court inquired as to whether there was "a fitness issue." Defense counsel

advised that she previously "had some concerns" and had requested an evaluation. She further advised that defendant had been found fit and that she had no further concerns. The State also indicated that it too was "not concerned."

¶ 11    The trial court asked defendant whether he needed the services of an interpreter and defendant said no. Defendant acknowledged that he heard the State recite the details of the plea agreement. Defendant acknowledged that he was pleading guilty to a Class 2 felony and would be placed on sex offender probation. Defendant acknowledged that he could be sentenced to a prison term of three to seven years, followed by a period of mandatory supervised release. The following colloquy took place regarding immigration consequences:

"THE COURT: ***

If you are not a U.S. citizen, [defendant], upon conviction of this offense, that could cause you to be deported, denied admission to the United States, denied citizenship or naturalization under the laws of the United States. Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: Have you talked about these immigration issues with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Have you talked about immigration issues with your client, Counsel?

THE DEFENDANT: No.

MS. SALONEN [(DEFENSE COUNSEL)]: Mr. McClure went through this paperwork with the client.

MR. MCCLURE [(DEFENSE COUNSEL)]: He indicated he is a U.S. citizen.

MS. SALONEN: He is a U.S. citizen.

THE COURT: All right. ***."

¶ 12    The trial court advised defendant that he had the right to plead not guilty and have a trial. The court further advised defendant that he was presumed innocent and that the State had the burden of proving him guilty beyond a reasonable doubt. Defendant indicated that he understood. The court next advised defendant that, if he went to trial, he had the right to put on his own defense, subpoena witnesses, and testify. Defendant indicated that he understood. The court advised defendant that, if he pleaded guilty, he was giving up those rights. Defendant indicated that he understood. Defendant confirmed that, considering everything the court told him, he still wished to plead guilty to one count of aggravated criminal sexual abuse and that he agreed with the recommended sentence.

¶ 13    The trial court asked defendant whether anyone forced, threatened, or coerced him to plead guilty, and defendant responded no. The court asked whether anyone had promised him anything other than the terms of the plea agreement, and defendant responded no. Defendant confirmed that he was pleading guilty freely and voluntarily and that he was satisfied with the work that his attorney had done for him. When asked whether he had any questions for the court about anything that he did not understand and whether there was anything that he thought the court should know, defendant replied no.

¶ 14    The trial court found that defendant understood the nature of the charges, his legal rights, and the potential penalties and that he was freely and voluntarily pleading guilty. The court heard the factual basis of the plea. According to the State, JoR would testify that she was born on November 7, 2009. She would testify further that, one night between November 7, 2020, and July 18, 2021, while she was in her bedroom, "defendant got into her bed, put his hand in her pants, touching her buttocks, and she wasn't wearing underwear." The State would introduce defendant's

certified driving abstract, which shows his birth date of September 14, 1992. Defense counsel stipulated to the factual basis. The court found the factual basis sufficient and stated that it agreed with the terms of the proposed agreement. The court entered judgment consistent with those terms.

¶ 15    Thereafter, the trial court reviewed the plea paperwork with defendant. The court showed defendant the (1) "Plea of Guilty," (2) "Specialized Sex Offender Probation Order," and (3) "Financial Sentencing Order." As the court showed defendant each document, defendant confirmed that he had read it, spoken to his attorney about it, understood it, signed it, and had no questions about it. The court also showed defendant a copy of the "Judgment Order." Defendant confirmed that, before signing the guilty plea, he had read the "Judgment Order," spoken to his attorney about it, and understood it. He also confirmed to the court that he had no questions about it. Next, with no objection by the State, the court granted a waiver of court assessments. Finally, the court explained defendant's appellate rights, and defendant indicated he understood them.

¶ 16                      D. Motion to Withdraw the Guilty Plea and

                        Counsel's Rule 604(d) Certificate

¶ 17    On February 7, 2024, defendant (through attorney Salonen) filed a motion to withdraw his guilty plea. In it, defendant alleged that "he did not knowingly and voluntarily enter into a guilty plea" and that he "did not knowingly and voluntarily enter into the entered disposition." He asked that the trial court allow him to withdraw his plea and vacate his conviction.

¶ 18    On October 23, 2024, a different assistant public defender—Judy Kullenberg—filed a certificate of compliance per Rule 604(d). The certificate, dated October 21, 2024, stated that she had (1) "consulted with *** [d]efendant in person, by mail, by phone or by electronic means to ascertain *** defendant's contentions of error in the entry of the plea of guilty and in the sentence"; (2) "examined the trial court file and report of proceedings of the plea of guilty and the report of

proceedings in the sentencing hearing"; and (3) "made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 19                    E. Hearing on the Motion to Withdraw the Guilty Plea

¶ 20    A hearing on the motion to withdraw took place on October 23, 2024. Three witnesses testified—defendant, McClure, and Salonen. At the outset of his testimony, defendant agreed that he was waiving attorney-client confidentiality. Defendant denied being under the influence of any drugs or medication. He also denied that there was anything physically, mentally, or emotionally impacting his ability to understand the proceedings. He stated that he did not need the services of an interpreter and that he was able to read, write, and understand English.

¶ 21    Defendant testified that he was 32 years old and had been charged in the present case with aggravated criminal sexual abuse. Salonen was his court-appointed attorney. He had also met with another attorney but could not remember her name. Defendant recalled entering his guilty plea on January 10, 2024. He recalled speaking with Salonen on the morning of the plea. When asked to describe how he was feeling that day, he responded: "I was under the influence that day I came." When asked what he meant, he replied: "I was on drugs." Defendant testified that he had taken PCP that morning. When asked how the drug affected him, he testified: "I just—I didn't—I didn't understand what I was signing that day when I came to the courtroom, when I met with [Salonen]." Defendant testified that he met with Salonen and "some other young man." He thought his name was "Seth McClure," but he was "not sure." Defendant reviewed paperwork with them. They did not ask him if he was under the influence of drugs, and he did not tell them that he was. He was in the room with Salonen and McClure for about fifteen minutes. Defendant acknowledged that he had previously agreed to take the State's plea offer. Counsel asked: "So the purpose of you coming to court that day and entering the plea was—what did you understand that to mean?" Defendant

replied: "I didn't understand any of the paper that I was—I had in front of me that day." Defendant did not ask his attorney any questions. Defendant recalled the judge asking him questions during the plea hearing. He recalled answering the questions, but he could not remember what he was asked.

¶ 22 Defendant testified that he entered a drug rehabilitation facility in May 2024. He was in the facility for 32 days and successfully completed the program. He "went to the rehab, because [he] was under TASC[( )] probation." He was currently on TASC probation. He has had a drug problem for "[a]bout three years." When asked how PCP affected him, he replied: "I just hallucinate. I just don't know—I lose my focus and I have a hard time understanding things, and yeah." The following colloquy took place as to defendant's state of mind when he came to court to enter his plea:

"Q. But in terms of your coming into court and entering a plea, tell us what your state of mind was when you came into court to enter the plea.

A. My state of mind?

Q. Right. Were you aware of what was going on?

A. No.

Q. Can you be a little bit more—can you explain a little bit more about that.

A. No.

Q. No?

A. No.

Q. Okay. And so you feel that you did not know what you were doing when you entered the plea because you were under the influence of PCP?

A. Yes."

¶ 23    On cross-examination, defendant agreed that he had spoken with Salonen on the day of his guilty plea and on the phone on a prior date. Defendant agreed that, on the day he entered his plea, he knew why he was coming to court. When asked whether Salonen had told him the nature of the State's offer, he replied no. He also denied that Salonen told him, on the day of the plea, what the offer was. He stated: "No. I mean, she just gave me papers and she just said I had to sign it." Defendant "believe[d]" that he answered in the affirmative each time the trial court asked him whether he understood. He agreed that he knew what " 'do you understand' " meant, but he added, "I was under the influence." Defendant agreed that he never told his attorneys, the State, or the court that he was under the influence. Defendant conceded that he had heard the offer that was laid out and that he agreed to the sentencing terms. Defendant also agreed that no one had threatened him into accepting the plea.

¶ 24    Defendant agreed that he spoke with both Salonen and McClure on the day of this guilty plea. Salonen had explained to defendant that she was needed in a different courtroom but that a colleague—McClure—would help go over the paperwork with defendant. Defendant did not remember whether McClure went line-by-line through the paperwork with him; he only remembered Salonen telling him that he had to sign the papers. Defendant could read English, but he did not read the forms. He did not remember McClure reading the paperwork to him. Defendant agreed that he told the court that he read and understood the forms. Defendant agreed that he signed the sex offender probation form and told the court that it was his signature, but he denied that he ever read the form. Defendant's mother and girlfriend were in the courtroom when defendant pleaded guilty. They did not tell anyone that defendant was under the influence.

¶ 25    Defendant was currently on TASC probation for "cases out of Cook County." Defendant agreed that this was not the first case in which he had pleaded guilty. He had "gone to other court

proceedings" and was "[s]omewhat" familiar with how the court system worked. Defendant agreed that he told the trial court fourteen times that he understood what was happening. Yet defendant denied that he did, in fact, understand: "I didn't understand. Like I said, I was under the influence that day. That's why I wasn't in the right state of mind that day."

¶ 26    On redirect examination, defendant testified that none of the people who accompanied him to his guilty plea spoke with Salonen. He testified further that Salonen and McClure never asked him if he was under the influence of drugs that morning. Defendant did not recall if the trial court ever asked him if he was under the influence of drugs.

¶ 27    After defendant rested, the State moved for a directed finding, which the trial court denied.

¶ 28    Before presenting its witnesses, the State asked the trial court to take judicial notice of defendant's "mental health evaluation" (presumably the fitness evaluation) and the court order indicating that defendant was found fit for trial. The court stated that it would "take judicial notice of the court's own records on this matter."

¶ 29    McClure testified that he had been an assistant public defender for "just under nine years." Before that, he worked for two years as a defense attorney for a private firm. On the day of defendant's plea, he assisted Salonen with defendant. Salonen went over the terms of the plea agreement with McClure, and McClure relayed the terms to defendant. McClure reviewed the paperwork line by line with defendant. Defendant had an opportunity to read the paperwork. As McClure reviewed the paperwork with defendant, he periodically asked defendant if he understood. Defendant always responded yes. After McClure went over the paperwork with defendant, he signed some of the documents. Defendant never told McClure that he was under the influence.

¶ 30    On cross-examination, McClure testified that he had spent about 10 to 15 minutes with defendant on the day of the plea. He did not believe that he had asked defendant if he was under the influence of drugs.

¶ 31    The trial court asked McClure whether defendant had given him "any physical manifestations that he was under the influence of substances or alcohol." McClure replied:

"He was, I would say, uncharacteristically quiet, Judge, no physical characteristics but because he was so quiet, I asked repeatedly if he understood the paperwork. I recall doing that."

McClure testified that "[defendant] always answered that he understood everything we went over."

¶ 32    On redirect examination, McClure testified that, at the time of the plea, defendant was not his client and that he did not recall having had any interactions with him before that day. McClure explained that when he said that defendant was "uncharacteristically quiet," he meant "compared to another person, not as him."

¶ 33    On recross-examination, McClure testified that he did not have any training in identifying people who are under the influence of drugs or alcohol.

¶ 34    Salonen testified that she had been an assistant public defender for "[a] little over fourteen years" and, before that, had worked as an intern in the Kane County Public Defender's Office for three years. Before the day of the plea, she had received an offer from the State as to defendant's case. She conveyed that offer to defendant twice on the phone, on two separate dates, and once by e-mail. When she spoke to defendant on the phone, she went through all the details of the offer. She told defendant that (1) he would be pleading guilty to "a Class 2 aggravated sexual abuse," (2) "[a] conviction would enter on his record," and (3) he would be sentenced to "48 months of sex offender specific probation." Salonen explained the "rules of sex offender specific probation"

to defendant. Salonen detailed for the court the specifics of what she explained to defendant. When Salonen periodically asked defendant if he had any questions, defendant did not indicate that he had any. On the day of the plea, Salonen "met with [defendant] briefly outside of the courtroom only to inform him that another attorney from [her] office would be reviewing plea paperwork but that the offer was the same that [they] had previously discussed." She explained to defendant that she "had a very heavy court call" that morning. Defendant indicated that he understood. He did not "seem to have any issues" with it. Salonen was with defendant in the courtroom when he entered his plea. Salonen had previously raised questions about defendant's fitness, and a mental health evaluation had been conducted. Ultimately, defendant was found fit.

¶ 35     On cross-examination, Salonen testified that she did not receive a response to her e-mail from defendant. When she twice spoke with defendant on the telephone about the terms of the plea, the calls each lasted about 20 minutes. The calls were not over Zoom, and Salonen could not see defendant. Salonen had the complete terms of the plea agreement since about October 31, 2023, and she had the terms when she spoke to defendant about them on the telephone. Salonen had prior in-person contacts with defendant at court appearances in his case, during which time they would discuss the case. To the best of her knowledge, defendant did not see the written terms of the sex offender probation until the day of the plea. In early November 2023, Salonen had concerns that defendant was not understanding her, and she raised the issue of his fitness. Salonen agreed that her interaction with defendant on the day of the plea was "very brief." Salonen agreed that she had "a very busy court call" and that she "had a lot of clients in custody." She did not go over the paperwork with defendant after he signed it in McClure's presence. She did not recall whether she had asked defendant if he had any questions for her. She did not ask him if he was under the influence.

¶ 36    On redirect examination, Salonen testified that, on the day of the plea, "fitness would not have been a concern."

¶ 37    The trial court asked Salonen whether, during the limited time that she spent with defendant on the day of the plea, there was "any manifestation of him being under the influence of any substances." Salonen replied no.

¶ 38    On cross-examination, Salonen testified that, "apart from personal experience," she had no special training in identifying individuals under the influence of drugs or alcohol.

¶ 39    Thereafter, the trial court denied defendant's motion to withdraw the plea, stating:

"I asked the defendant a lot of questions and I did ask [defendant] a lot of questions. [Defendant] answered all of them. All the answers were appropriate, although they're usually one word answers, yes or no or I do understand. They're not long answers. They're always appropriate. There doesn't appear to be any hesitations that's going on. There is no indication of any outbursts or anything that might have happened otherwise while this was going on. He listened to every question. He answered every question certainly responsive to—he answered the questions that were—his answers were responsive to the questions that I asked all the way through it.

[Defendant] would indicate and testified today that he was so under the influence of PCP, that he didn't remember anything that was said, and didn't understand anything that was explained to him. I find that there is insufficient proof to prove that [defendant] did not understand the warnings given to him during the taking of the plea or the import of those warnings as testified to by both of his lawyers, both Assistant Public Defenders in this matter who indicate that they saw no outward appearances of him being under the influence of any intoxicants at that particular time.

I asked them several questions about his condition and I saw no indication during his plea from my recollection which is kind of vague because it was a while ago and there are a lot of pleas done since then. Clearly, somebody with this [*sic*] these two experienced lawyers, if somebody was going to put a plea in when they did not understand what was being told to them, they would have noticed that. I believe that 100 percent. I am denying the defense's motion to withdraw the guilty plea."

¶ 40   This timely appeal followed.

¶ 41                                II. ANALYSIS

¶ 42                    A. Whether the Trial Court Erred in Denying

                          the Motion to Withdraw the Guilty Plea

¶ 43   Defendant first contends that the trial court erred in denying his motion to withdraw his guilty plea because the plea was not knowing and voluntary where he was under the influence of PCP, a hallucinogenic drug, when he entered his plea. Thus, he maintains that we should reverse the trial court's order denying his motion and remand for further proceedings.

¶ 44   "A defendant does not have an automatic right to withdraw [his or] her guilty plea, as '[a] plea of guilty is a grave act that is not reversible at the defendant's whim.' " *People v. Burge*, 2021 IL 125642, ¶ 37 (quoting *People v. Reed*, 2020 IL 124940, ¶ 47). "Rather, a defendant must establish a manifest injustice under the facts involved." *Id.* "[A] defendant should be allowed to withdraw his plea where his plea was not constitutionally entered." *People v. Manning*, 227 Ill. 2d 403, 412 (2008). As is relevant here, "[a] defendant may challenge the constitutionality of his guilty plea *** by alleging that the plea of guilty was not made voluntarily or with full knowledge of the consequences." *Id.* The decision whether to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the trial court and, therefore, is reviewed for abuse of discretion.

*People v. Hughes*, 2012 IL 112817, ¶ 32. "An abuse of discretion will only be found where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Burge*, 2021 IL 125642, ¶ 37.

¶ 45    Before reaching the merits, we address defendant's request that we take judicial notice of the effects that PCP can have on a user. The information defendant relies on is contained in two different publications made available on a government website. According to defendant, we may take judicial notice of this information because it is derived from a public website maintained by the United States government.

¶ 46    In response, the State directs us to Rule 201 of the Illinois Rules of Evidence (Ill. R. Evid. 201 (eff. Jan. 1, 2011)). Rule 201 permits a court to take notice of "adjudicative facts." Ill. R. Evid. 201(a) (eff. Jan. 1, 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011). Although the State directs us to Rule 201, it does not argue how Rule 201 warrants a denial of defendant's request under the facts of this case. For instance, it makes no argument that the effects of PCP are "subject to reasonable dispute." The State also argues that "[d]efendant does not cite to any case law showing that it is appropriate for a court to take judicial notice of reports generated by the government in lieu of presenting expert testimony to establish this type of evidence." We note, however, that defendant did cite supporting authority for his judicial-notice request. See, *e.g.*, *Country Cos. v. Universal Underwriters Insurance Co.*, 343 Ill. App. 3d 224, 229 (2003) ("[W]e may take judicial notice of public records regardless of whether such records were before the trial court.").

¶ 47 In any event, we agree with defendant that we may take judicial notice of the information about the effects of PCP contained in the publications available on the government website. See *People v. Vara*, 2016 IL App (2d) 140849, ¶ 37 n.3 (taking judicial notice of information regarding "grooming," as it related to sexual abuse of a child, obtained from a public website maintained by the United States government).

¶ 48 Accordingly, at defendant's request, we take judicial notice that "[PCP] is a dissociative anesthetic that is a commonly used recreational drug," and that it can cause "hallucinations." See Jonathan D. Journey & Thomas P. Bentley, U.S. Nat'l Insts. of Health's Nat'l Libr. of Medicine, *Phencyclidine Toxicity*, (Sept. 4, 2023) https://www.ncbi.nlm.nih.gov/books/NBK507865/ [https: //perma.cc/8563-6V5W] (last visited Aug. 25, 2025). We also take judicial notice, at defendant's request, that short-term symptoms of PCP use include: "Delusions, hallucinations, paranoia, problems thinking, a sense of distance from one's environment, [and] anxiety." See U.S. Dep't of Health & Hum. Servs., Off. of the Surgeon Gen., *Facing Addiction in America: The Surgeon General's Report on Alcohol, Drugs, and Health*, App. D at page 71 (2016), https://www. hhs.gov/sites/default/files/facing-addiction-in-america-surgeon-generals-report.pdf [https://perma .cc/EZ4V-V6RG] (last visited Aug. 25, 2025). Further, "[l]ong-term [c]onsequences of [u]se and [h]ealth [e]ffects," include: "Memory loss, problems with speech and thinking, depression, psychosis, weight loss, [and] anxiety." *Id.*

¶ 49 Turning to the merits, after a review of the record, we find no abuse of discretion by the trial court in denying defendant's motion to withdraw his plea. Defendant testified that he had had a drug problem for "[a]bout three years." He testified that he entered a drug rehabilitation facility in May 2024 (several months after his guilty plea), was in the facility for 32 days, and had successfully completed the program. Defendant claimed that, when he pleaded guilty on January

10, 2024, he was under the influence of PCP. Defendant claimed that PCP caused him to "hallucinate," "lose [his] focus," and "have a hard time understanding things." As to how it affected him specifically on the day of his plea, he claimed that he "[did not] understand what [he] was signing." These effects, he maintains, are consistent with PCP use as indicated in the cited literature.

¶ 50    Postplea counsel argued that defendant provided credible testimony that he was under the influence of PCP at the time of the plea, given his history of drug use and his recent participation in a 30-day rehabilitation program. Counsel challenged Salonen's and McClure's testimony by emphasizing that Salonen spent little time with defendant—five to ten minutes—on the morning of the plea and that McClure, who had never met defendant, testified that he seemed "uncharacteristically quiet." Counsel also noted that the trial court never asked defendant during the plea colloquy whether he was under the influence of drugs. Nevertheless, we agree with the trial court that the record of the plea hearing, particularly the testimony from Salonen and McClure, rebutted defendant's claim.

¶ 51    First, we agree that there is no indication from the transcript of the guilty plea hearing that defendant was under the influence of PCP. Defendant was repeatedly asked whether he understood the trial court's admonishments, and defendant responded affirmatively each time. As the trial court noted, defendant "listened to every question" and his answers were "responsive" and "always appropriate." The court further noted that there did not "appear to be any hesitations" or "indication of any outburst or anything that might have happened otherwise while this was going on." The court recalled that it "saw no indication during [the] plea" that defendant was under the influence of any drugs.

¶ 52    Nevertheless, defendant maintains that the record indicates that he was "confused." As evidence of confusion, defendant points to one portion of the plea hearing when the trial court inquired as to whether he had discussed immigration consequences with his attorney. Defendant initially responded yes, but when the court asked Salonen whether she had discussed immigration consequences with defendant, defendant interjected and said no. After defendant's interjection, (1) Salonen explained that McClure had gone over the paperwork with defendant, (2) McClure indicated that defendant told him that he was a United States citizen, and (3) Salonen confirmed that defendant was a United States citizen. This exchange does not conclusively establish that defendant was confused. Indeed, two other interpretations are plausible. Defendant might have been clarifying that he did not speak with *Salonen* about immigration consequences, or, alternatively, that he did not discuss immigration consequences *at all* because, as McClure indicated, defendant advised that he was a United States citizen. The trial court did not clarify what defendant meant.

¶ 53    Defendant further maintains that the fact that he participated in the plea hearing by answering yes-or-no questions does not establish that his plea was voluntary. As persuasive authority, he cites *People v. Murray*, 2024 IL App (1st) 221101-U.[1] However, *Murray* is distinguishable. There, the defendant pleaded guilty to one count of domestic battery and subsequently moved to withdraw her plea, claiming it was not knowing and voluntary and that she had a meritorious defense. *Id.* ¶¶ 2, 23. At the hearing, the defendant presented testimony from an expert in forensic clinical psychology, who had evaluated the defendant, reviewed the defendant's

_____

[1]Unpublished cases filed under Illinois Supreme Court Rule 23(b) after January 1, 2021, may be cited as persuasive authority. Ill. S. Ct. R. 23(b), (e)(1) (eff. Jan. 1, 2021).

records, and reviewed the plea transcript. *Id.* ¶ 24. The expert testified that, at the time of the plea, for a variety of reasons, the defendant was unable to knowingly and intelligently plead guilty. *Id.* ¶¶ 25-29. When questioned on cross-examination about the defendant's statements during the plea hearing indicating that she understood the trial court's admonishments, the expert "explained that [the defendant's] answers to yes-or-no questions were less probative of her actual state of mind than her open-ended statement in allocution, which addressed matters that were peripheral or even irrelevant to the plea of guilty such as her belief that her son [the victim] had been coerced." *Id.* ¶ 29. The trial court denied the motion to withdraw the plea, and the defendant appealed. *Id.* ¶ 36. The reviewing court reversed, based in part on the expert's uncontradicted testimony that, at the time of her plea, "[the defendant] was not able to make the life-changing decision to plead guilty knowingly and intelligently." *Id.* ¶¶ 48, 50. Here, unlike in *Murray*, nothing occurred at the plea hearing that would warrant disregarding the fact that defendant appropriately answered all questions asked.

¶ 54    Salonen's and McClure's testimony, to which the trial court afforded great weight, also rebuts defendant's claim. Salonen, a seasoned defense attorney who had prior in-person contacts with defendant as his appointed counsel at court appearances, testified that, on the day of the plea, she had no concerns about defendant's fitness and saw no signs that defendant was under the influence of any substances. Although Salonen's time with defendant before entering the courtroom was "very brief," Salonen was with defendant in the courtroom when he entered his plea. Like the trial court, we have no doubt that, if Salonen had reason to believe that defendant was not understanding the proceedings, she would have raised the issue with the court as she had done previously. In addition to Salonen, McClure—a second experienced defense attorney—spent about ten to fifteen minutes with defendant on the day of the plea, reviewing the plea paperwork

line-by-line with defendant. As he did so, he periodically asked defendant if he understood, and defendant always responded yes. While he noted that defendant had been "quiet" compared to other defendants, McClure saw no evidence that defendant was under the influence. Indeed, McClure repeatedly confirmed with defendant that he understood everything that was being discussed, and defendant repeatedly stated that he did. As with Salonen, we have no doubt that, had McClure been concerned about defendant, he would have raised those concerns with Salonen.

¶ 55     As noted, the decision whether to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the trial court. See *Hughes*, 2012 IL 112817, ¶ 32. Here, in denying the motion to withdraw the guilty plea, the court considered the guilty plea proceedings, along with the testimony of defendant, Salonen, and McClure. Giving great weight to Salonen's and McClure's testimony that defendant did not exhibit any signs that he was under the influence, the court determined that defendant's plea was knowingly and voluntarily made. Having reviewed the record, we cannot say that the court's conclusion was "arbitrary, fanciful, unreasonable, or [that] no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) See *Burge*, 2021 IL 125642, ¶ 37.

¶ 56          B. Whether Postplea Counsel Strictly Complied with Rule 604(d)

¶ 57     Alternatively, defendant contends that postplea counsel failed to strictly comply with Rule 604(d) because the record refutes her certification that she made any amendments to the postplea motion necessary for an adequate presentation of any defects in the guilty plea proceedings. Thus, he maintains that the matter must be remanded for the filing of a new motion to withdraw the plea and a hearing on the motion.

¶ 58     "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *People v. Brown*, 2024 IL 129585, ¶ 47. One of the

fundamental requirements under Rule 604(d) is that "[t]he motion shall be in writing and shall state the grounds therefor." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). In addition, "[w]hen the motion is based on facts that do not appear of record it shall be supported by affidavit." *Id.* Rule 604(d) also imposes a certification requirement on postplea counsel. It provides:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." *Id.*

"The filing of a Rule 604(d) certificate allows the circuit court to ensure counsel has reviewed the defendant's claim and considered all relevant bases for moving to withdraw the guilty plea or to reconsider the sentence." *Brown*, 2024 IL 129585, ¶ 47. " ' "The attorney certificate thereby encourages the preservation of a clear record, both in the trial court and on appeal, of the reasons why a defendant is moving to withdraw his plea or to reduce sentence." ' " *Id.* (quoting *In re H.L.*, 2015 IL 118529, ¶ 10 (quoting *People v. Shirley*, 181 Ill. 2d 359, 361, (1998)). Postplea counsel must "strictly comply" with Rule 604(d)'s certificate requirements. *People v. Gorss*, 2022 IL 126464, ¶ 19. "[T]he failure to do so requires 'a remand to the [trial] court for the filing of a new motion to withdraw guilty plea *** and a new hearing on the motion.' " *Id.* (quoting *People v. Janes*, 158 Ill. 2d 27, 33 (1994)). Even where counsel has filed a facially valid certificate, courts may consult the record to determine whether counsel has actually complied with her obligations under Rule 604(d). *Brown*, 2024 IL 129585, ¶ 49; see *People v. Curtis*, 2021 IL App (4th) 190658,

¶ 36 (collecting cases). This court considers *de novo* whether counsel complied with Rule 604(d). *Brown*, 2024 IL 129585, ¶ 48.

¶ 59    Defendant contends that, here, although postplea counsel filed a facially valid certificate, the record rebuts it where counsel failed to amend the motion to (1) include the assertion that defendant had been under the influence of drugs when he entered his guilty plea and (2) attach affidavits and evidence supporting defendant's claim. The State responds that neither argument warrants a remand.

¶ 60    We first consider defendant's claim that the record rebuts the certificate because counsel failed to amend the motion to allege that defendant was under the influence of PCP when he pleaded guilty. The State argues that this was not a new claim such that counsel was required to amend the motion for purposes of Rule 604(d). We agree. The motion to withdraw alleged that "[defendant] did not knowingly and voluntarily enter into a guilty plea." The argument raised at the hearing—that defendant was under the influence of PCP when he entered his plea—merely provided the factual basis for the involuntariness claim raised in the petition. Defendant does not direct us to any authority that would lead us to conclude otherwise. Even if it could be said that counsel should have amended the motion to specifically allege that defendant's plea was involuntary *because he was under the influence of PCP when he entered his plea*, the omission was inconsequential because counsel presented the court with testimony and argument to support this claim; indeed, it was the only claim advanced. See *Curtis*, 2021 IL App (4th) 190658, ¶ 39 (record did not rebut the facially valid certificate where the record reflected that postplea counsel, "in essence," presented the trial court at the hearing on the motion to withdraw with the claims the defendant argued were absent from the amended motion).

¶ 61    We next consider defendant's argument that the record rebuts counsel's Rule 604(d) certificate because counsel failed to attach affidavits and evidence supporting defendant's claim. The State argues that, although counsel's failure to attach defendant's affidavit technically violates Rule 604(d), defendant received a full and fair hearing and, thus, remand is not warranted. We agree with the State.

¶ 62    We find *People v. Brown*, 2023 IL App (4th) 220573, instructive. In *Brown*, the defendant entered a negotiated plea to aggravated domestic battery and was sentenced to prison. *Id.* ¶¶ 5-12. Thereafter, his plea counsel filed a motion to withdraw the guilty plea. *Id.* ¶ 13. Plea counsel alleged his own ineffectiveness in that he promised the defendant that he would be sentenced to probation. *Id.* The motion also claimed that the defendant did not understand that he had the option to go to trial or that he pleaded guilty to aggravated domestic battery. *Id.* The trial court appointed new postplea counsel. *Id.* ¶ 14. Postplea counsel adopted the defendant's motion without amending it and filed two identical, facially valid Rule 604(d) certificates. *Id.* ¶¶ 15, 18. Following an evidentiary hearing on the ineffective assistance claim, at which both the defendant and plea counsel testified, the trial court denied the motion. *Id.* ¶¶ 16-22. In addition to the testimony, the court also considered its own recollections of the plea proceedings. *Id.* ¶ 22.

¶ 63    On appeal, the defendant argued that the record refuted postplea counsel's certificates, because counsel failed to amend the deficient motion to allege a required element of an ineffective assistance claim—that the defendant would not have pleaded guilty but for plea counsel's conduct—and failed to procure affidavits to support that claim. *Id.* ¶¶ 25, 27. Thus, the defendant argued that the matter must be remanded for new postplea proceedings. *Id.* ¶ 25. The reviewing court held that, despite defects in the pleadings, remand was unwarranted where the defendant's claim was found meritless after a full and fair hearing. *Id.* ¶ 50. In support, it relied on the reasoning

and holdings of three unpublished decisions: two from its district—*People v. Kocher*, 2021 IL App (4th) 200610-U, and *People v. Jones*, 2021 IL App (4th) 180497-U—and one from the Fifth District—*People v. Jackson*, 2022 IL App (5th) 200042-U.

¶ 64     In *Kocher*, the defendant entered a guilty plea and then attempted to withdraw it, first by writing a letter to the trial court and then by filing a *pro se* motion to withdraw his plea. *Kocher*, 2021 IL App (4th) 200610-U, ¶¶ 8, 10-11. No action was taken on the letter, and the court dismissed the motion as untimely. *Id.* ¶¶ 10-11. On appeal, the Fourth District found that the court erred in not treating the defendant's letter as a motion to withdraw the plea. *Id.* ¶ 12. Thus, the court remanded the case " 'for the appointment of counsel to assist [the] defendant in the preparation and litigation of a Rule 604(d) motion if [the] defendant wishe[d] to pursue such a course.' " *Id.* ¶ 12 (quoting *People v. Kocher*, 2020 IL App (4th) 180715-U, ¶ 21). On remand, new postplea counsel filed an amended motion to withdraw the defendant's guilty plea and a Rule 604(d) certificate. *Id.* ¶ 13. The amended motion stated that the defendant was claiming that his decision to plead guilty resulted from the ineffective assistance of counsel. *Id.* The motion included numerous references to events occurring outside of the record, but postplea counsel failed to attach an affidavit or other exhibit in support of the factual allegations. *Id.* Both the defendant and his plea counsel testified at the hearing on the amended motion. *Id.* ¶¶ 14-15. The trial court denied the motion, finding plea counsel's testimony more credible than the defendant's. *Id.* ¶ 16.

¶ 65     On appeal, the defendant contended that, although postplea counsel filed a facially compliant Rule 604(d) certificate, the record showed that counsel failed to comply with Rule 604(d), in part because he failed to file affidavits to support the defendant's claim. *Id.* ¶ 22. Thus, he argued that the matter should be remanded for compliance with Rule 604(d). *Id.* The court noted that, under Rule 604(d), because the allegations concerned matters outside of the record,

supporting affidavits were required. *Id.* ¶ 27. Nevertheless, the court relied on the reasoning in *Shirley*, 181 Ill. 2d at 369, where our supreme court held that multiple remands for technical violations of Rule 604(d) may be unnecessary where a defendant receives a full and fair hearing on his claim. *Kocher*, 2021 IL App (4th) 200610-U, ¶¶ 28-30. Thus, the court concluded that remand was not required. *Id.* ¶ 32. The court found that postplea counsel's failure to file a supporting affidavit "constitute[d] a technical rather than a substantive error." *Id.* ¶ 31. The court found that "[d]espite this error, [the] defendant was not deprived of the due process protections that Rule 604(d) was intended to provide," noting that, at the hearing, the defendant "was provided a meaningful opportunity to present evidence in support of [his] assertions." *Id.* The court concluded that "a second remand requiring a second hearing on [the] defendant's claims would be an empty and wasteful formality." *Id.* ¶ 32.

¶ 66    In *Jones*, the defendant filed a *pro se* motion to withdraw his guilty plea. *Jones*, 2021 IL App (4th) 180497-U, ¶ 5. Postplea counsel filed an amended motion, along with a facially valid Rule 604(d) certificate. *Id.* ¶ 8. The amended motion alleged that

> "(1) the sentence was excessive, (2) [the defendant's] plea was not knowingly, understandingly, and voluntarily made because he felt [plea counsel] was not acting in his best interests, (3) he did not feel comfortable with [plea counsel], (4) [plea counsel] never told him he could appeal a guilty plea, *** (5) he thought he had no other options than to take the negotiated plea offer, [and (6)] the State and [plea counsel] incorrectly considered a prior DUI that [the] defendant did not commit." *Id.* ¶¶ 6, 8.

Following a hearing, at which both the defendant and plea counsel testified, the trial court denied the motion. *Id.* ¶¶ 9-12.

¶ 67 On appeal, the defendant argued that, despite filing a facially valid certificate, postplea counsel failed to support the amended motion with affidavits verifying the factual assertions in the amended motion as required by Rule 604(d). *Id.* ¶ 16. The reviewing court denied the defendant's request for a remand, relying—like *Kocher*—on the reasoning espoused in *Shirley*. *Id.* ¶ 20. Although the court specifically acknowledged that *Shirley* addressed multiple remands, the court found that "the same principle applie[d]" in the case at hand. *Id.* The court stated:

> "[The] [d]efendant was afforded the due process Rule 604(d) seeks to provide, and therefore, a remand for strict compliance with Rule 604(d)'s affidavit requirement is unnecessary because[ ] *** either the facts supporting [the] defendant's claims are of record or because he was afforded the opportunity in a full meaningful evidentiary hearing to present evidence supporting his claims." *Id.* ¶ 22.

"That is, an affidavit would not have provided the trial court with any information that was not or could not have been presented at the hearing." *Id.* ¶ 23. The court stated further:

> "[The] defendant is not entitled to two bites at the apple when he had every opportunity at the full evidentiary hearing to present facts during his testimony that would have supported his claim that his guilty plea should have been withdrawn. As our supreme court has stated, the purpose of Rule 604(d) is to ensure that that 'the trial judge who accepted the plea and imposed sentence be given the opportunity to hear the allegations of improprieties that took place outside the official proceedings and *dehors* the record[.]' [Citation.] The court here had the opportunity." *Id.* ¶ 24.

¶ 68 In *Jackson*, postplea counsel filed an amended motion including claims that there was doubt as to the defendant's guilt and that he had a defense worthy of consideration. *Jackson*, 2022 IL App (5th) 200042-U, ¶ 31. Counsel did not attach affidavits or supporting documents to the

motion. *Id.* Plea counsel and the defendant testified at the hearing on the motion, and postplea counsel presented the defendant's claims. *Id.* ¶¶ 20-24. The trial court denied the motion. *Id.* ¶ 25. On appeal, the defendant argued that the record refuted postplea counsel's facially compliant Rule 604(d) certificate because postplea counsel provided "mere conclusory allegations" and failed to submit affidavits. *Id.* ¶ 30. Citing *Curtis* and *Kocher*, the reviewing court determined that, "despite any alleged inadequacy in the amended motion to withdraw guilty plea, postplea counsel developed the defendant's claims at the hearing on the amended motion and made argument as to why the defendant had a defense worthy of consideration." *Id.* ¶ 37. Accordingly, the court held that remand was not warranted. *Id.*

¶ 69    The *Brown* court, after reviewing *Kocher*, *Jones*, and *Jackson*, concluded: "Where postplea counsel files a facially compliant Rule 604(d) certificate and the trial court determines after a full and fair hearing that the defendant's claims are meritless, defects in the pleadings do not justify a remand for further proceedings." *Brown*, 2023 IL App (4th) 220573, ¶ 50. The court stated further that "it would be an exercise in futility and a waste of judicial resources to remand for an attorney to replead a claim that has already been adjudicated meritless." *Id.*

¶ 70    We agree with the reasoning adopted by the Fourth District in *Brown*. Here, despite postplea counsel's failure to amend the motion to attach affidavits supporting defendant's claim that he had taken PCP on the day of the plea, remand is unwarranted where defendant was afforded a full and fair hearing to present his claim that his plea was involuntary because he was under the influence of PCP at the time. In his reply brief, defendant does not acknowledge *Brown* or the other supporting cases. Instead, defendant argues that the State's position "expands the reasoning in *Shirley* beyond its actual ruling" because the defendant in *Shirley* was seeking "a second remand," whereas, here, defendant is seeking his first remand. We note, however, that *Brown* too

involved a request for an initial remand, as did *Jones* and *Jackson*. Indeed, the *Brown* court specifically acknowledged this distinction (as did the *Jones* court) and, nevertheless, concluded that a remand was unwarranted because, "[w]here postplea counsel files a facially compliant Rule 604(d) certificate and the trial court determines after a full and fair hearing that the defendant's claims are meritless, defects in the pleadings do not justify a remand for further proceedings." *Brown*, 2023 IL App (4th) 220573, ¶ 50.

¶ 71    Defendant here received a full and fair hearing on the claim that was alleged in broad strokes in his petition. As noted, defendant testified that, on the day of his plea, he was under the influence of PCP and thus his plea was not knowing and voluntary. Defendant testified that PCP caused him to "hallucinate," "lose [his] focus," and "have a hard time understanding things." He testified that he had had a drug problem for "[a]bout three years," entered a drug rehabilitation facility in May 2024, was in the facility for 32 days, and successfully completed the program. As to his state of mind on the date of the plea, he testified that he was not aware of what was going on and did not know what he was doing when he entered his plea. Thus, defendant was able to put the entirety of his claim before the court, testifying to any assertions that would have been included in an affidavit.

¶ 72    Defendant argues in his reply brief that he was not provided a full and fair opportunity to present his claim because postplea counsel "offered no affidavits or testimony from anyone who could corroborate [defendant's] contention, describe how [defendant] behaved while under the influence, or speak to the effects of PCP on cognition." However, defendant has not alleged that any specific witness exists who could corroborate defendant's claim that he had taken PCP on the morning of his plea or describe how defendant behaved while on PCP. Thus, it is a matter of pure speculation that such evidence exists. Further, although defendant criticizes counsel's failure to

include evidence of PCP's effects, he seemingly concedes (in the context of his judicial notice argument) that "the hallucinogenic effects of PCP are a matter of common knowledge." In any event, defendant makes no argument that the result of the proceeding would have been different had counsel presented such evidence. See *People v. Tejada-Soto*, 2012 IL App (2d) 110188, ¶¶ 16-17 (applying the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984), and rejecting, for lack of prejudice, the defendant's claim that the hearing on remand did not strictly comply with Rule 604(d) where counsel failed to present certain evidence); *People v. Bridges*, 2021 IL App (2d) 190778-U, ¶¶ 23-25 (same).

¶ 73 Finally, we note that defendant's reliance on *People v. Bridges*, 2017 IL App (2d) 150718, and *People v. Winston*, 2020 IL App (2d) 180289, does not lead us to a different conclusion, as they are readily distinguishable. We note, too, that they predate the analysis in *Brown*.

¶ 74 In *Bridges*, the defendant's postplea counsel amended the defendant's *pro se* motion to withdraw his plea to include a detailed allegation that the defendant was coerced to plead guilty due to threats of violence against his mother. *Bridges*, 2017 IL App (2d) 150718, ¶ 2. Counsel did not attach any affidavits substantiating that claim. *Id.* ¶ 1. We noted that, because those allegations were not supported by the record, Rule 604(d) required that they be supported by an affidavit. *Id.* ¶ 9. Thus, we held that, because counsel did not submit such affidavits, his facially valid Rule 604(d) certificate ultimately did not comply with Rule 604(d). *Id.* We emphasized that counsel "also failed to present [the] defendant's testimony or any other evidence in support of [the] defendant's motion." *Id.* We concluded further "that the hearing on the motion was inadequate to satisfy Rule 604(d)'s strict-compliance standard." *Id.* ¶ 10. We stated: "[C]ounsel's failure to offer any argument or evidence in support of the motion functioned as a concession that the motion was without merit. Thus, the hearing in this case served little purpose other than to clear a procedural

hurdle to this appeal." *Id.* ¶ 11. Indeed, the defendant was not even present. *Id.* Here, as noted, postplea counsel presented defendant's testimony at the hearing addressing the sole claim raised in the motion. Thus, unlike in *Bridges*, defendant was able to present the testimony that would have been contained in his affidavit. In addition, counsel cross-examined the State's witnesses and fully argued the merits of defendant's claim.

¶ 75     In *Winston*, the defendant moved to withdraw her guilty plea, and postplea counsel filed an amended motion and a facially valid Rule 604(d) certificate. *Winston*, 2020 IL App (2d) 180289, ¶¶ 3-4. At a hearing on the motion, the defendant testified that the evidence was insufficient to prove her guilt beyond a reasonable doubt, and counsel attempted to admit four handwritten statements to support this claim. *Id.* ¶¶ 4-9. Counsel neither included this claim in the amended motion to withdraw the guilty plea nor supported the claim with affidavits. *Id.* ¶¶ 3, 15. The trial court refused to admit the statements and denied the motion to withdraw the guilty plea. *Id.* ¶¶ 9-10. We determined that postplea counsel's failure to raise and support the insufficiency-of-the-evidence claim in the amended motion refuted counsel's Rule 604(d) certificate. *Id.* ¶ 16. We observed that, in *Bridges*, counsel had neither adequately raised the issue in the amended motion nor provided supporting evidence at the hearing, whereas in *Winston* counsel attempted to raise the issue at the hearing. *Id.* However, we found that, even though counsel in *Winston* attempted to raise the insufficiency-of-the-evidence claim at the hearing, that effort did not cure the failure to raise the issue with supporting evidence in the amended motion. *Id.* We held that, because counsel argued that the evidence was insufficient to prove the defendant's guilt beyond a reasonable doubt, "counsel was obligated to advance that argument in an amended motion supported by affidavits from the witnesses whose testimony supposedly would have exonerated [the] defendant." *Id.* ¶ 15.

¶ 76     Here, unlike in *Winston*, postplea counsel did not attempt to raise a new claim at the hearing. Indeed, defendant's *sole* claim—the involuntariness of his guilty plea—was raised in the amended motion. Moreover, postplea counsel presented testimony and argument in support of that claim and fully argued the merits of the motion at the hearing.

¶ 77     In sum, we find that there is no question that defendant was afforded the due process that Rule 604(d) seeks to provide. Under the circumstances presented here, it would be an exercise in futility and a waste of judicial resources to remand this case for an attorney to replead defendant's claim, which was found meritless after a full and fair hearing.

¶ 78                                  III. CONCLUSION

¶ 79     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 80     Affirmed.